513 So.2d 1138 (1987)
SUCCESSION OF Bilwood SMITH
v.
KAVANAUGH, PIERSON & TALLEY, et al.
No. 86-CC-0753.
Supreme Court of Louisiana.
September 9, 1987.
Rehearing Denied November 3, 1987.
*1140 John White, Jr., Baton Rouge, for applicant.
Paul Spaht, Kantrow, Spaht, Weaver & Blitzer, Stephen Wilson, Keogh, Cox & Wilson, Ltd., Baton Rouge, John Combe, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Donald Zuber, Seale, Smith & Phelps, Charles Schutte, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, Frederick *1141 Preaus, Ward & Clesi, A. Justin Ourso, III, Hervin Guidry, David B. Girard, Barham & Churchill, New Orleans, Marc W. Judice, Juneau, Hill, Judice, Hill & Adley, Lafayette, David M. Ellison, Ellison & Smith, Baton Rouge, Michael R. Fontham, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, Jeri Ann Flynn, Baton Rouge, Anne W. Schneider, J.B. Kiefer, Metairie, for respondents.
DENNIS, Justice.[*]
In this legal malpractice action, filed after the apparent expiration of the prescriptive period, the plaintiff's allegation that she was informed for the first time on August 10, 1984 about the defendants-attorneys' acts of malpractice in handling her husband's succession, and the defendants' attempt to depose plaintiff's present attorney on that subject, have raised issues as to (1) whether plaintiff waived her attorney-client privilege regarding communications with her present attorney by pleading contra non-valentum or by testifying on her deposition about those communications and (2) whether defendants have shown extraordinary circumstances as required by law for taking the deposition of an attorney of record. After a hearing, the trial court ordered the plaintiff's attorney to submit to a deposition as to communications which occurred on or before August 10, 1984 between him and plaintiff discussing alleged acts of malpractice which caused damages. The court of appeal granted the defendants' application for a supervisory writ and ordered the plaintiff's attorney to submit to a deposition as to his knowledge of any matters concerning alleged acts of malpractice obtained from the date of the initial attorney-client consultation (February 10, 1984) through August 10, 1984. No. CW-86-0445 (La.App. 1st Cir. April 17, 1986).
We granted plaintiff's application for a writ and vacated the court of appeal order. 488 So.2d 191 (La.1986). Subsequently we granted a rehearing. 492 So.2d 1210 (La.1986). We now affirm our decision to vacate the court of appeal order and remand the case to the trial court with instructions: If plaintiff elects not to use evidence of attorney-client communications a deposition of her attorney may not be taken; if she elects to use such evidence, the trial court's order permitting his deposition shall be reinstated.
A litigant's pleading of a claim or defense to which his attorney-client communications are relevant does not by such pleading alone waive his attorney-client privilege. A pleading must inevitably require the introduction of a privileged communication at trial to constitute a waiver. A party who makes a pretrial partial disclosure of his attorney-client communications waives his privilege as to all such communications on the same subject unless he stipulates that he will not introduce any such communications at trial. Furthermore, by electing or committing himself to introduce his attorney-client communications at trial and thereby waiving his privilege to such communications, a party creates a special unfairness to his adversary which qualifies as an extraordinary circumstance warranting a court order that his attorney submit to a deposition by his adversary as to these communications.

Facts
Bilwood Smith died August 10, 1968. Mrs. Earline Jo Jennings Smith, his widow and plaintiff herein, employed the defendant attorneys and law firms to represent her and her late husband's succession. Mrs. Smith served as provisional administratrix, administratrix and executrix until she renounced the succession on December 4, 1970. The defendant attorneys and firms represented Mrs. Smith in her individual and representative capacities and handled the legal affairs of the succession.
Mrs. Smith filed this suit on June 10, 1985 to recover for damages to herself and the succession allegedly caused by the defendant attorneys' legal malpractice. In her petition Mrs. Smith alleged that she was not aware of the acts of malpractice until August 10, 1984. The defendants *1142 filed an exception of liberative prescription urging that the one year prescriptive period expired before plaintiff filed her suit.
Defendants took a deposition of Mrs. Smith. She testified that she was not aware of any negligence or wrongdoing on defendants' part until her present lawyer informed her on August 10, 1984 that the defendants had maladministered the succession. She admitted that she had first consulted her attorney on February 28, 1984 and had met with him between that date and August 10, 1984. However, she contended that he had not informed her of any dereliction of duty by her former attorneys until the latter date.
Upon learning that Mrs. Smith first consulted her present attorney more than one year before filing suit, the defendants moved the district court to grant them leave to take her attorney's deposition. After a hearing, the district court granted defendants leave to depose plaintiff's attorney as to attorney-client communications on or before August 10, 1984 regarding acts of malpractice causing damages. The court of appeal, in response to defendants' application expanded the scope of the authorized deposition to cover the attorney's knowledge concerning alleged malpractice obtained during the attorney-client relationship between February 28, 1984 and August 10, 1984. No. CW-86-0445 (La.App. 1st Cir.1986). We granted a writ and vacated the court of appeal order. 488 So.2d 191 (La.1986). We granted a rehearing and now consider whether the material sought through deposition by defendants is privileged and whether defendants have demonstrated extraordinary circumstances as required by law to take the deposition of an attorney of record.

The Attorney Client Privilege
La.R.S. 13:3734.3 (West Supp.1987) provides that "[n]o attorney or counsellor at law shall give evidence of anything that has been confided to him by his client...." The privilege extended in civil cases first appeared in Louisiana as article 2262 of the Civil Code of 1825 before its transfer to article 2283 of the Civil Code of 1870 and its reenactment as a revised statute in 1986.[1]
The notion that the loyalty owed by the lawyer to his client disables him from being a witness in his client's case is deep-rooted in Roman law. McCormick, On Evidence, § 87, at 204 (3rd ed. 1984). This Roman tradition may have been influential in developing the attorney-client privilege, which is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence, § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends on the lawyer's being fully informed by the client. Upjohn Co. v. United States, 449 U.S. 383, 390-93, 101 S.Ct. 677, 683-84, 66 L.Ed.2d 584, 592-93 (1981).
The lawyer's exemption from disclosing his client's secrets is justified on the ground that claims and disputes which may lead to litigation can most justly and expeditiously be handled by practiced experts, namely lawyers, and that these experts can act effectively only if they are advised of the facts by the parties whom they represent. Full disclosure will be promoted if the client knows that what he tells his lawyer cannot, over his objection, be extorted in court from his lawyer's lips. McCormick, supra, § 87. The privilege also promotes compliance with the law, particularly in complex areas of business law such as antitrust, securities, and tax. The attorney to whom confidences are freely expressed has a greater opportunity to learn of and counsel against potentially unlawful conduct. See Upjohn, 449 U.S. at 390, 101 S.Ct. at 683, 66 L.Ed.2d at 592; In re Horowitz, 482 F.2d 72, 81 (2d Cir.), cert. *1143 denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); Davidson & Voth, Waiver of the Attorney-Client Privilege, 64 Or.L.Rev. 637, 638 (1986).
Although the defendants do not question the privileged character of the attorney-client communications for the most part, they argue briefly that the communications at issue in this case were not confidential because of the presence of Mrs. Smith's accountant during her consultations with her attorney. It is of the essence of the privilege that it is limited to those communications which the client either expressly made confidential or which he could reasonably assume under the circumstances would be understood by the attorney as so intended. McCormick, supra, § 91, at 217. However, if the help of an expert or skilled person such as an accountant or interpreter is necessary to enable the client to consult the lawyer his presence does not deprive the communication of its confidential and privileged character. United States v. Kovel, 296 F.2d 918, 920-23 (2d Cir.1961); McCormick, supra, § 91, at 218. In the present case the assistance of Mrs. Smith's accountant was necessary to enable her to consult with the attorney and she could reasonably assume the attorney understood that their communications were intended to be confidential.

Waiver of Privilege
The client is the holder of the privilege; therefore, the power to waive it is his alone, or his attorney or agent acting with his authority, or his representative may exercise this power. McCormick, supra, § 93, at 223. Waiver includes, as Wigmore points out, not merely words or conduct expressing an intention to relinquish a known right, but conduct which would make it unfair for the client to insist on the privilege thereafter. Id.; 8 Wigmore, supra, § 2327, at 636. See also United States v. Woodall, 438 F.2d 1317, 1324 (5th Cir.1970), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); State v. Aucoin, 362 So.2d 503, 505-6 (La.1978) (quoting 8 Wigmore, supra, § 2388 (3), at 855).
The unfairness justifying a waiver of the privilege, however, must flow from the act on which the waiver is premised, not from a vague sense that the existence of the privilege itself is inequitable. Wigmore, who supports the privilege, acknowledges, that, "Its benefits are all indirect and speculative; its obstruction is plain and concrete." 8 Wigmore, supra, § 2291, at 554. Nevertheless, the legislature in recognizing the privilege has decided that the detriment to justice from a power to shut off inquiry into pertinent facts in court will be outweighed by the benefits to the system of justice (not to the client) from a franker disclosure in the lawyer's office. McCormick, supra, § 87, at 205. See Upjohn Co., 449 U.S. at 389, 101 S.Ct. at 682, 66 L.Ed.2d at 591 (1981). Consequently, a waiver must be founded on an affirmative act by the privilege-holder that creates some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself. Marcus, The Perils of Privilege: Waiver and the Litigator, 84 Mich.L.Rev. 1605, 1607 (1986).[2]
The kind of unfairness justifying waiver most commonly results from a privilege-holder's abuse of his privilege in three types of situations: (1) "partial disclosure"a strategic introduction into evidence of only part of a larger class of privileged material;[3] (2) "pretrial partial disclosure"a pretrial disclosure of privileged communication indicating a decision to rely on privileged evidence at trial;[4] and (3) "placing *1144 privileged communications at issue"an affirmative pleading of a claim or defense that inevitably requires the introduction of privileged communications.[5] See Developments, supra, at 1629 (1985); Marcus, supra, at 1628; Davidson & Voth, supra, at 639-40.
Disclosure at trial of only part of a larger body of privileged communications is deemed to be a waiver of privilege with respect to any withheld information about communications on the same subject matter. 8 Wigmore, supra, § 2327, at 636-38. Accordingly, a privilege-holder who testifies or permits his confidant to testify at trial about his privileged communications with his attorney or physician, waives his right to invoke the privilege as to cross-examination or testimony of others with regard to communications on the same subject. Hunt v. Blackburn, 128 U.S. 464, 470-71, 9 S.Ct. 125, 127, 32 L.Ed. 488, 491 (1888); Jackson v. Swift & Co., 151 So. 816, 818 (La.App. 2d Cir.1934); State v. Sullivan, 230 Or. 136, 141-42, 368 P.2d 81, 83-84 (1962), cert denied, 370 U.S. 957, 82 S.Ct. 1610, 8 L.Ed. 823 (1962); Mauro v. Tracy, 152 Colo. 106, 108, 380 P.2d 570, 571 (1963); 8 Wigmore, supra, § 2327 (4) & (5), at 638; McCormick, supra, § 93, at 224-25. The introduction into evidence of documents disclosing privileged communications also waives the privilege against testimony or production of further documents disclosing communications on the same subject. Edmund J. Flynn Co. v. La Vay, 431 A.2d 543, 551 (D.C.1981); Hill v. Hill, 106 Colo. 492, 107 P.2d 597, 598-99 (1940); McCormick, supra, § 93, at 226.
The rationale of a waiver based on partial disclosure is that permitting a party to make such an incomplete disclosure, without losing his privilege with respect to the remainder of the communication or communications on that subject, would be unfair to the adversary because it would give the privilege-holder unchecked editorial control over the available evidence to a degree that would practically ensure a distorted presentation of the communication or communications. See Woodall, 438 F.2d at 1324-26; In re Penn Cent. Commercial Paper Litig., 61 F.R.D. 453, 464 (S.D.N.Y.1973); Developments, supra, at 1632 n. 17. Privileges generally deprive litigants and the judicial system of probative evidence, and the suppression of such evidence disadvantages the opposing litigant. The disadvantage arising from the general recognition of a privilege is, however, qualitatively distinct from the unfairness created by a partial disclosure. A partial disclosure creates the additional risk of distorting or garbling the communication by allowing partial introduction without providing the opponent an opportunity to establish its true content and context.
A partial disclosure without a waiver of the privilege as to the remainder of the privileged communications on the same subject would conflict with the fundamental precept of our adversarial system of justice that litigants should have a fair opportunity to test each other's evidence through cross-examination and rebuttal. Developments, supra, at 1634. This right is an example of the traditional principle of completeness, which will often make admissible testimony as to the remainder of a conversation, statement, confession, act or occurrence. See State v. Green, 443 So.2d 531, 537 (La.1983); Broussard v. State Farm Mut. Auto. Ins. Co., 188 So.2d 111, *1145 120 (La.App. 3d Cir.), writ denied, 249 La. 713, 190 So.2d 233 (1966), cert. denied, 386 U.S. 909, 87 S.Ct. 855, 17 L.Ed.2d 783 (1967); La.R.S. 15:450 (West 1981); La.C.Civ.P. art. 1450. See also Proposed Louisiana Code of Evidence, arts. 106, 401-403 and 611 (A) and the comments thereto; 7 J. Wigmore, Evidence In Trials at Common Law, § 2113 (J. Chadbourn rev. ed. 1978); Developments, supra, at 1634 n. 24. Also, as Learned Hand put it with regard to the fifth amendment, "the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; ... it should not furnish one side with what may be false evidence and deprive the other of the means of detecting the imposition." United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir.1942), cert. dismissed as moot, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). See Marcus, supra, at 1607.
A pretrial partial disclosure does not cause the same kind of immediate unfairness as a partial disclosure at trial, because the communication fragment has not yet been introduced into evidence against an opponent. Nevertheless, it may cause comparable unfairness by distorting an opponent's settlement evaluations and obstructing his ability to prepare effectively for trial. Developments, supra, at 1635. These considerations have led courts to invoke the principle of "anticipatory waiver" in ordering the discovery of otherwise privileged communications when such discovery merely anticipates a waiver by disclosure at trial. See Leucadia, Inc., 101, F.R.D. 679-80; International Tel. & Tel., 60 F.R.D. at 186. Because the unfairness of pretrial partial disclosure is merely an outgrowth of anticipated use of the disclosed communication fragment at trial, the disclosing party always has the option of avoiding compelled discovery by stipulating that he will not introduce that or any privileged communications upon the same subject into evidence at trial. Cf. International Tel. & Tel., 60 F.R.D. at 186.
Placing-at-issue waiver occurs when a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. Consequently, he places at issue and waives his privilege as to communications on the same subject under his control. Developments, supra, at 1637; Marcus, supra, at 1630-31 and 1655. See Leucadia, Inc., 101 F.R.D. at 679-80. Placing-at-issue waiver is an application of the "anticipatory waiver" principle. An allegation, which anticipates a disclosure that will inevitably occur at trial creates the same type of unfairness as a pre-trial partial disclosure: delaying waiver until trial could hamper settlement evaluation and effective trial preparation. Developments, supra, at 1639; Marcus, supra, at 1630.
Some courts have adopted a more liberal view of placing-at-issue waiver by applying the three-part test set forth in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash.1975): the attorney-client privilege is waived when the privilege-holder (1) through some affirmative act, makes an assertion that (2) renders relevant to the action (3) privileged matter that is vital to the opposing party's defense. See Connell v. Bernstein-Macaulay, Inc., 407 F.Supp. 420, 422-23 (S.D.N.Y.1976); and League v. Vance, 221 Neb. 34, 374 N.W.2d 849, 856 (1985). The rationale for finding that the attorney-client privilege causes unfairness in these cases is, however, unclear and has been the subject of well taken scholarly criticism. Developments, supra, at 1639-43; Marcus, supra, at 1628-32; Davidson & Voth, supra, at 649.
We have not followed the Hearn v. Rhay test because it improperly undermines the legislatively established attorney-client privilege by causing courts to reassess the privilege by weighing the individual privilege-holder's interests against his opponent's need for evidence whenever the privilege is attacked. Developments, supra, at 1641-43. This ignores the general interest of the system of justice in maintaining the privilege and leads to automatic waiver even when there has been no misuse by the privilege-holder or unfairness to his opponent. Developments, supra, at 1642-43 n. 66. In reality the Hearn "test" is no test at all because the assertion of almost any *1146 claim or defense can be called an "affirmative act", and privileged material will usually be "relevant" and "vital" to the opposing party, or else he would not make the effort to obtain it. Developments, supra, at 1642-43. The aggregate effect of the application of this and other liberal waiver rules is a severe weakening of the privilege that results in increased litigation costs, more judicial time spent on discovery disputes, and a loss of confidence in the privilege. Marcus, supra, at 1608, 1609-13, and 1614-16; Developments, supra, at 1643; Davidson & Voth, supra, at 653-57. Unfortunately it also appears that the deleterious consequences of the broad waiver rules fall more heavily upon the poorer litigants. Marcus, supra, at 1613-14.
Legislatively-established privileges that can be nullified only by the privilege-holder's waiver, such as the attorney-client privilege, should not depend on case-by-case balancing of harm to the relationship against an opposing litigant's need for information. The privilege has been instituted by the legislature on the basis of a system-wide balancing of costs and benefits. Once all the technical requirements of a privilege have been met, courts should not impose their own sense of the equities, because trial judges may tend to give decisive weight to the needs of the parties before them, without adequately considering the full, system-wide benefits of a privilege. A rule of waiver that turns on the opponent's need for information would subject the privilege to the hazards of fortune: the continued existence of one's privilege would depend not on how one has used or abused the privilege, but rather on who one's adversary happens to be. Developments, supra, at 1641-43; Marcus, supra, at 1629; Davidson & Voth, supra, at 649.
Under the anticipatory waiver theory, which we adopt herein, the court is not invited to readjust the cost-benefit balance struck by the legislature in establishing the attorney-client privilege. Waiver does not depend merely upon the relevance of privileged communications or upon the court's impression as to how badly the opposing party needs the evidence. Under the anticipatory waiver theory the court must concern itself solely with whether the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication.

Application of Waiver Doctrine to Mrs. Smith's Pleading and Pretrial Deposition
In Mrs. Smith's petition she alleged that "[o]n August 10, 1984, petitioner was informed for the first time that original defendants' legal malpractice caused damages to decedent's succession...." However, Mrs. Smith did not waive her attorney-client privilege by her pleading because she did not thereby commit herself to a course of action that would require the disclosure of a privileged communication. It was possible, insofar as the facts set forth in her petition require, for her to carry the burden of proving that she did not and could not reasonably have known of the legal malpractice cause of action prior to the stated date without necessarily disclosing the privileged communications between herself and her attorney.
On the other hand, in her pretrial deposition Mrs. Smith testified that in August of 1984 her present attorney, John White, informed her for the first time that the defendants had maladministered her husband's succession. She further testified that she had no knowledge of the defendants' alleged malpractice before this date and had not received information indicating maladministration from any other source. Thus, Mrs. Smith indicated an intention to use the disclosed communication with her attorney at the trial of the exception of prescription to explain her failure to file suit within the prescriptive period. Accordingly, her deposition testimony may constitute a pretrial partial disclosure of a privileged communication amounting to a waiver of her privilege as to relevant communications with her attorney on the same subject. As privilege-holder, however, Mrs. Smith has the option of avoiding compelled discovery of the communications by stipulating that she will not introduce that or any communication on the same subject *1147 into evidence at trial of the exception or the merits.

Extraordinary Circumstances Warranting Deposition of Attorney of Record
Because Mrs. Smith may elect to introduce evidence of her privileged communications with her attorney and thereby waive her privilege as to all such relevant communications on the same subject, we must decide whether, in the event of waiver, the defendants may depose Mrs. Smith's attorney with respect to such communications and other matters. Louisiana Code of Civil Procedure article 1452(B) provides that "[n]o attorney of record ... shall be deposed except under extraordinary circumstances and then only by order of the district court after contradictory hearing." This provision was added by Act 761 of 1981, the sole purpose of which was to enact a blanket prohibition against depositions of attorneys of record, except under extraordinary circumstances shown to the district court during a contradictory hearing. We believe that the legislation was enacted in response to criticism of the expanding practice of taking the deposition of opposing counsel as being detrimental to the legal profession and the judicial system. See, e.g., Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir.1986); Fireman's Fund Ins. v. Superior Court, 140 Cal.Rptr. 677, 679, 72 Cal.App.3d 786 (Cal.2d Dist.Ct.App.1977). Cf. Upjohn, 449 U.S. at 396, 101 S.Ct. at 686, 66 L.Ed.2d at 595 (quoting J. Jackson's concurrence in Hickman v. Taylor, 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451, 465 (1947): "`Discovery was hardly intended to enable a learned profession to perform its functions ... on wit borrowed from the adversary.'")
The Louisiana rule is diametrically different from the federal rule and the rules followed by other states. Rule 30(a) of the Federal Rules of Civil Procedure provides in part that "any party may take the testimony of any person, including a party, by deposition upon oral examination." (emphasis added) This language has been construed to include an attorney for a party to the action. 4A J. Moore, J. Lucas & D. Epstein, Moore's Federal Practice § 30.51 (2d ed. 1984); 8 Wright & Miller, Federal Practice and Procedure, § 2102, at 369-70 (West 1970). An attorney for a party may be examined, subject to objections of privilege, in the absence of a showing of extraordinary circumstances warranting a protective order. Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir.1979); In re Arthur Treachers Franchise Litigation, 92 F.R.D. 429, 437 (E.D.Pa.1981); Daniels v. Hadley Men. Hosp., 68 F.R.D. 583, 588 (D.D.C.1975). A similar rule prevails in other states as well. See, e.g., Ex Parte Scott, 414 So.2d 939, 941-42 (Ala.1982). Accordingly, the rule followed in the federal courts and the other states is opposite in character to the Louisiana statutory rule under which an attorney of a party may not be deposed, even with respect to non-privileged material, absent extraordinary circumstances shown contradictorily.
Applying La.C.Civ.P. art. 1452(B) to the present case, we conclude that defendants made a showing of extraordinary circumstances warranting the taking of the plaintiff attorney's deposition as to attorney-client communications on the same subject as any communications with respect to which Mrs. Smith may elect to waive her attorney-client privilege. But we further conclude that defendants failed to show extraordinary circumstances entitling them to depose the attorney on any other subject. Moreover, the defendant's success or failure in showing extraordinary circumstances in each instance is so clear that an exhaustive interpretation of this term is not necessary or appropriate in this case.
In the event Mrs. Smith elects to use part or all of her communications with her attorney to prove her lack of knowledge of malpractice at the trial of the prescription exception, the special unfairness which justifies a waiver of her attorney-client privilege with respect to these communications creates extraordinary circumstances warranting the taking of her attorney's deposition. If Mrs. Smith were allowed to use only a part of these communications as evidence and suppress the remainder, an unfair risk of a decision based on garbled *1148 or distorted information would be created. Therefore, to overcome the unfairness of such a potential misuse of the privileged material, the defendants must be permitted to explore the communications fully at the trial of the exception and to depose the attorney with respect to them in preparation for that trial.
On the other hand, a different result will prevail if Mrs. Smith elects not to use any privileged communication at the trial of the exception or the merits and so stipulates. In such a case she is entitled under her legislatively established privilege to suppress attorney-client communications even though they may constitute relevant evidence, because she has not misused the privilege by unfairly creating the risk that distorted information will be used against her opponents. While it probably would be more convenient for the defendants to secure the results of Mrs. Smith's attorney's investigation by taking his deposition, "such considerations of convenience do not overcome the policies served by the attorney-client privilege." Upjohn, 449 U.S. at 396, 101 S.Ct. at 686, 66 L.Ed.2d at 595.
Defendants have failed to make a showing of extraordinary circumstances warranting the deposition of the attorney upon any material other than the attorney-client communications to which Mrs. Smith may waive her attorney-client privilege. As for the material other than attorney-client communications, Mrs. Smith and her attorney have not claimed any privilege or immunity. Therefore, with regard to this material there does not exist the potential for special unfairness which is associated with a partial disclosure of privileged matter, viz., the risk of truth garbling or distortion caused by a privilege-holder's selective presentation and suppression of parts of the privileged material. Consequently, with respect to this material, the defendants have access to virtually unlimited means of discovery and are not confronted with any extraordinary problems in gathering evidence, settlement evaluation or trial preparation. The fact that examination of the plaintiff's attorney might provide an additional or easier discovery method does not create an extraordinary circumstance justifying an exception to the legislative policy disfavoring depositions of attorneys of record. If there should be a rare situation not involving potential misuse of privileged material that justifies the deposition of a party's attorney this case is not of that type.

Remaining Issues
Neither the plaintiff nor the defendants rely entirely upon the ground of decision relied upon by the district court or the court of appeal, but urge at length that the record discloses other grounds, not considered by those courts, for reaching the decision argued for by each. Under the circumstances it is open to us to deal only with the discovery question considered by the lower courts and to remand the case to the district court for any needed action upon other questions, or to proceed ourselves to a complete decision. See Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567 (1920). The former course seems the better, because the additional questions presented are either insubstantial or better decided by the district court after a trial of the prescription exception on its merits.

Decree
The judgments below are vacated. The case is remanded to the district court which is instructed: (1) to require Mrs. Smith to elect whether to use as evidence communications with her attorney upon trial of the exception of prescription and require her to enter any appropriate stipulation in that connection; (2) in the event Mrs. Smith elects to make use of the attorney-client communications, to reinstate the district court's order that the plaintiff's attorney submit to a deposition as to attorney-client communications on or before August 10, 1984 discussing alleged acts of malpractice causing damages; and (3) to enter any other needful rulings or orders upon the other questions raised.
JUDGMENTS BELOW VACATED; CASE REMANDED TO DISTRICT COURT WITH ORDER.
LEMMON, WATSON and MARCUS, JJ., dissents and assigns reasons.
*1149 WATSON, Justice, dissenting.
I adhere to the original order of this court which would not allow taking the deposition of plaintiff's lawyer; while there are equities on both sides, the attorney-client privilege is more important than any prejudice to defendant.
Therefore, I respectfully dissent.
MARCUS, Justice (dissenting).
I consider that plaintiff by pleading contra non valentum and testifying on her deposition about communications made with her present attorney has placed her privileged communications with her present attorney at issue and therefore has waived her attorney-client privilege relative to these communications since the information is vital to defendants' defense of the case. Likewise, since plaintiff has placed at issue the date she had knowledge of the facts upon which defendants' alleged malpractice is based and such information is dispositive of whether her claim has prescribed, I consider that a sufficient showing of "extraordinary circumstances" has been made to warrant taking the deposition of her attorney. However, I would limit the deposition to the discovery of facts of plaintiff's knowledge of defendants' alleged malpractice from the date of the initial attorney-client consultation (February 10, 1984) through August 10, 1984.
Accordingly, I respectfully dissent.

ON APPLICATION FOR REHEARING
DENNIS, Justice.
Plaintiff's application for rehearing is denied. In considering the application, however, we have decided to give further explanation of what kind of statement by Mrs. Smith would constitute a waiver of her attorney-client privilege. If she expressly waives her attorney client privilege, of course, there is really no question presented for the court to decide. But if she proposes to make a statement which the defendants argue amounts to a waiver by implication, a difficult problem may be raised.
As an approach to solving such a problem, we adopt the analysis and precepts of Wigmore:
"What constitutes a waiver by implication?
"Judicial decision gives no clear answer to this question. In deciding it, regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and consistency. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final. As a fair canon of decision, the following distinctions may be suggested:
"(1) The client's offer of his own testimony in the cause at large is not a waiver for the purpose either of cross-examining him to the communications or of calling the attorney to prove them. Otherwise the privilege of consultation would be exercised only at the penalty of closing the client's own mouth on the stand.
"(2) The client's offer of the attorney's testimony in the cause at large is not a waiver so far as the attorney's knowledge has been acquired casually as an ordinary witness. But otherwise it is a waiver for, considering that the attorney ought in general not to be used as a witness (§ 1911 supra), the client ought to be discouraged from utilizing his attorney in double and inconsistent capacities, and if he has seen fit to furnish him knowledge as a witness, he should deny himself the right to invoke the attorney's function as an adviser.
"(3) The client's offer of his own testimony as to specific facts about which he has happened to communicate with the attorney is not a waiver, for the same reason as in paragraph (1) supra. But his offer of the attorney's testimony as to such specific *1150 facts is a waiver, for the same reason as in paragraph (2) supra.
"(4) The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.
"(5) The client's offer of his own or the attorney's testimony as to a part of any communication to the attorney is a waiver as to the whole of that communication, on the analogy of the principle of completeness (§ 2113 supra).
"(6) When the client alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue."
(Footnotes and Subsection (7) omitted.) Wigmore on Evidence § 2327.
See also, McCormick on Evidence, § 93, at 224 (3rd ed. 1984) ("[T]he mere voluntary taking the stand by the client as a witness in a suit to which he is party and testifying to facts which were the subject of consultation with his counsel is no waiver of the privilege for secrecy of the communications to his lawyer. It is the communication which is privileged, not the facts. If on direct examination, however, he testifies to the privileged communications, in part, this is a waiver as to the remainder of the privileged consultation or consultations about the same subject.") (Footnotes omitted.); People v. Kor, 129 Cal.App.2d 436, 277 P.2d 94, 99 (1955) (Kor's statement that he told the attorney "what had happened and how it happened," was a general statement which did not disclose, or purport to disclose what words were used by Kor in telling the attorney of the happening, or what in substance was said by him. That statement revealed nothing that was confidential; there was no waiver.); Lohman v. Super. Ct. in and for Alameda County, 81 Cal.App.3d 90, 146 Cal.Rptr. 171, 174 (1978) (Waiver occurs when holder of the privilege has voluntarily disclosed a significant portion of the privileged communications or has consented to such disclosure made by anyone. Citing West's Ann.Cal.Evid.Code § 912(a)); People v. Marsh, 59 A.D.2d 623, 398 N.Y.S.2d 166 (1977) ("The attorney-client privilege is not waived unless a defendant testifies as to the contents of prior conversations with his attorney or the latter's agent."); Swanson v. Domning, 251 Minn. 110, 86 N.W.2d 716, 722 (1957) (Client waived her privilege by testifying that her attorney advised her not to sign a contract for deed stating "it is a shady deal."); People v. Lynch, 23 N.Y.2d 262, 244 N.E.2d 29, 34, 296 N.Y.S.2d 327, 334 (1968) (Witness did not waive privilege by testifying to an event he had discussed with his attorney because he did not testify to the content of their conversation).
Applying these precepts to statements which Mrs. Smith may propose to make at the trial of the exception of prescription we conclude that: If, for example, Mrs. Smith chooses to testify that she was unaware that the defendants had committed legal malpractice causing damage to decedent's succession prior to August 10, 1984, that on that date she visited her attorney and received communications from him and that she then had knowledge for the first time that the defendants had committed malpractice damaging the succession, these statements would not constitute a waiver of her attorney-client privilege because she would not have offered her testimony as to all or part of a specific communication to or from her attorney. On the other hand, for example, if Mrs. Smith elects to testify at the trial of the exception, as she did at her deposition, that her attorney Mr. White told her on August 10, 1984 that in his legal opinion the defendants maladministered the succession causing her a loss, this statement would constitute a waiver because it is an offer of her testimony as to a part of a specific communication between her and her attorney.
The difference between the two examples is that in the first instance Mr. Smith would have testified to events rather that the specific content of the conversations with her attorney, and in the second instance she would have testified to part of *1151 the specific communications with her attorney. As Wigmore observes, a fair cannon of decision requires that the client's offer of his own or the attorney's testimony as to a part of their specific attorney-client communication is a waiver as to the whole of that communication, on the analogy of the principle of completeness. Wigmore, supra § 2327. Because verbal utterances differ from other acts or events, in that utterances are frequently so inseparably united that any one utterance by itself would by wholly misleading, the principle of completeness requires that verbal utterances must be taken as a whole, not by fragments or by summary. Wigmore, supra § 2094.
COLE, J., recused.
DIXON, C.J., CALOGERO, J., and CURRAULT, J. ad hoc, join DENNIS, J.'s reasons for denying the rehearing.
WATSON, J., concurs in the reasons of DENNIS, J., in denial.
MARCUS, J., does not subscribe to the reasons for denial of the application for rehearing, but would simply deny the rehearing.
LEMMON, J., concurs in the denial of the application for rehearing, but expressly declines to subscribe to the reasons which purport to rule definitively on conduct which has not yet occurred and is not before the court.
NOTES
[*] Judge Nester L. Currault, Jr. of the Court of Appeal, Fifth Circuit, retired, participated in this decision as Justice Pro Tempore in place of Justice Cole, who was recused.
[1] La.R.S. 13:3734.3 (West Supp.1987) was enacted by 1986 La. Acts No. 470 to reestablish the attorney-client privilege for civil cases which was previously contained in La.Civ.Code art. 2283 (1870) (La.Civ.Code art. 2283 (1870) was repealed by 1984 La. Acts No. 331).
[2] Waiver due to the unfairness of a privilege holder's action is to be distinguished from other types of waiver such as inadvertent waiver, waiver due to information sharing and waiver caused by witness preparation. For discussion of these latter types of waiver see, e.g., Marcus, supra, at 1633-48; DevelopmentsPrivileged Communications, 98 Harv.L.Rev. 1450, 1656-65 (1985); and Davidson & Voth, supra, at 640-46 and 657-61.
[3] Woodall, 438 F.2d at 1324; IBM Corp. v. Sperry Rand Corp., 44 F.R.D. 10, 13 (D.Del.1968).
[4] New Orleans Saints v. Griesedieck, 612 F.Supp. 59 (E.D.La.1985), affirmed, 790 F.2d 1249 (5th Cir.1986); International Tel. & Tel. Corp. v. United Tel. Co., 60 F.R.D. 177, 186 (M.D.Fla.1973).
[5] Leucadia, Inc. v. Reliance Ins. Co., 101 F.R.D. 674, 579-80 (S.D.N.Y.1983) (The plaintiff waived its privilege as to communications in a certain document because its pleadings required it to assume the burden of showing that it had discovered a covered loss within a year of the cancellation of the Reliance fidelity bond, which it could prove only by use of communications contained in privileged documents.). A number of cases and statutes respond to a perceived unfairness created by a pleading indicating an intention to use privileged materials at trial. Aucoin, 362 So.2d at 506; La.R.S. 13:3734(C)(3) (West Supp.1987). E.g., Byers v. Burleson, 100 F.R.D. 436, 440 (D.D.C.1983). Although these authorities may be viewed generally as examples of placing-in-issue waiver, in some instances they constitute hair-trigger and overly broad responses because they may require a waiver before the privilege holder is inevitably committed to using privileged communications as evidence.