657 So.2d 1098 (1995)
Louis B. MERHIGE
v.
Helen GUBBLES, A/K/A Helen Gubbles Turner.
No. 95-C-1106.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 1995.
*1099 The Derbes Law Firm, Albert J. Derbes, III, Albert J. Derbes, IV, Eric J. Derbes, Metairie, for relator, Helen Gubbles, a/k/a Helen Gubbles Turner.
Stone, Pigman, Walther, Wittmann & Hutchinson, Steven W. Usdin, New Orleans, for respondent, Louis B. Merhige.
Before JONES, WALTZER and MURRAY, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Relator, Helen Gubbles a/k/a Helen Gubbles Turner, seeks review of the trial court's ruling denying her motion for a protective order and dismissing her reconventional demand.
Respondent, Louis B. Merhige, sued Relator alleging intentional infliction of emotional and mental distress over a twelve year period, and seeking injunctive relief and damages. Respondent's petition alleges that Relator has persisted, through "countless persistent intrusions" into his life to force her affections on Respondent, despite his repeated refusal of her advances. In article 8 of the petition, Respondent alleges: "Petitioner is advised that defendant has a medical history which causes him further apprehension and distress."
Relator answered the petition and objected that the allegations of article 8 were vague and not properly subject for a response. Relator reconvened, alleging that Respondent made improper advances to her, which she rejected, and his actions have caused her severe emotional distress. She also seeks injunctive relief and damages.
Subsequently, Respondent propounded a second set of interrogatories to the Relator seeking information identifying all health care providers she consulted within the last eighteen years, the purpose of treatment, identification of facilities at which she was treated for mental disorders, the nature of the "mental difficulties" for which she received treatment, prescribed medications and employment history. Respondent also sought eight medical authorizations from the Relator. In response, Relator moved for a protective order as to the second set of interrogatories, except as they related to her employment history, and as to the request for medical authorizations. She filed a separate motion to dismiss her reconventional demand without prejudice.
After a hearing, the trial court granted Relator's motion to dismiss her reconventional demand without prejudice, and denied her motion for a protective order insofar as it would prohibit Respondent from discovering the Relator's medical records, but granted the motion insofar as Respondent is instructed not to divulge the discovered medical records which are not part of prior custody hearing to anyone not associated with this case. The trial judge made his judgment subject to further orders of the trial court.
From that judgment, Relator seeks supervisory writs of review. The trial court also stayed the execution of the order requiring Relator to provide Respondent with her medical records for twenty days, giving the defendant time to file her writ application.

*1100 ANALYSIS OF ARGUMENT

Relator argues that the trial court erred in denying her motion for a protective order while granting her motion to dismiss her reconventional demand without prejudice. Relator contends that the motion to dismiss her reconventional demand was contingent upon the trial court's granting her motion for a protective order. Relator contends that the medical documents which plaintiff seeks are privileged and not discoverable.
In denying Relator's motion for a protective order, the trial court stated, in its written reasons:
Counsel for defendant asserts that the medical records of his client are not subject to discovery by the plaintiff because there is no exception under Code of Evidence Article 510B(2) relating to this case.
Plaintiff responds that much of the records were discovered in custody hearing held some years ago between the defendant and her former spouse and as it may have been referred to in reported decisions of the Court of Appeal and/or Supreme Court.
This Court has not been provided with any authority for the proposition that medical records introduced into a court proceeding are not subject to discovery by the members of the public.
Additionally, the Court finds that there is a classification under exceptions in Article 510 of the Code of Evidence relating to civil proceedings. In particular, the Court refers to sub-paragraph (c) which provides that there is a waiver of the privilege when a patient is a party and relies upon the medical condition as an element of his or her defense.
Paragraph 8 in the plaintiff's original petition states that "defendant has a medical history, which causes him further apprehension and distress."
The defendant answers such allegation in her answer in paragraph 3 that states that: "defendant objects to the allegations of fact contained in paragraph 8 of plaintiff's petition in that they are vague and are not properly subject for a response."
To the extent that the defendant objects to the allegation as being vague the Court finds that the plaintiff is entitled to discover the medical records and history of the defendant in order to be very precise with the allegations as to what in her medical history, if anything, would cause him "apprehension and distress."
Accordingly, the Court finds that the plaintiff is entitled to discover the medical records.
Additionally, the plaintiff argues that the credibility of the defendant is at issue and to the extent that she testifies in her own behalf at trial then the plaintiff is entitled to discover the medical records for impeachment purposes since the defendant is relying upon her credibility as a defense and her credibility includes the assumption that she is in control of her mental faculties.
The scope of discovery by the parties in a civil action encompasses any matter not privileged, regardless of its admissibility at trial if the information is reasonably calculated to lead to the discovery of admissible evidence. La.C.C.P. art. 1422. A party or the person from whom discovery is sought may move for a protective order which may be issued for good cause to protect a person or party from annoyance, embarrassment, oppression or undue burden or expense. La.C.C.P. art. 1426.
La.R.S. 13:3734[1] provides that a patient's communication to a health care provider is privileged information and the patient may refuse to disclose the communications *1101 except in certain circumstances.[2] The privilege may be waived by the patient (or the party to whom the privilege applies). This waiver may be express or implied. Succession of Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138 (La.1987).
Article 510 of the Code of Evidence sets forth the physician-patient privilege applicable to communications made on and after 1 January 1993:
B. (1) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health care condition between or among himself or his representative, his health care provider, or their representatives.
The article also provides for exceptions to the privilege. One such exception exists when "the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense...." La. C.E. article 510(B)(2)(c).
The Supreme Court in Succession of Smith discussed three situations which could cause unfairness from an abuse of the privilege: (1) partial disclosure of privileged communication at trial; (2) pre-trial partial disclosure; and (3) placing privileged communication at issue.
During trial, the disclosure of part of a larger body of privileged communication is deemed a waiver of all of the communication on the subject. This protects the adversary from the unchecked editorial control of the privileged party over available evidence. Id. at 1144.
Pre-trial partial disclosure, while not causing the same immediate unfairness as in-trial disclosure, can cause comparable unfairness by distorting settlement evaluation and obstructing the opposing party's ability to prepare effectively for trial. As a result, courts have invoked the principle of "anticipatory waiver" to order discovery of privileged material whose use at trial is anticipated. The privilege holder can avoid this discovery by stipulating that he will not introduce it, or any privileged communication on the same subject, at trial. Id. at 1145.
The placing-at-issue waiver occurs when the privilege holder pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. As a result, the privilege is waived as to all communications on that subject. Id.
The waiver does not depend solely on the relevance of the privileged material, or on the adversary's need, no matter how strong, for the communication. The focus is on the privilege holder, and the sole concern is whether the privilege holder has "committed himself to a course of action that will require the disclosure of a privileged communication." Id. at 1146.
In the present case, the trial court concluded that Relator waived her privilege when she answered article 8 of Respondent's petition. Her answer, objecting to the article's vagueness, is not sufficient to place her mental health at issue. Defendant's voluntary dismissal of her reconventional demand reveals an intent to avoid placing her medical condition at issue. The motion to dismiss constitutes evidence that the defendant is committed to a "course of action" that will preclude the disclosure of any privileged communications.
The issue of waiver is complicated in this case by the fact that at least some of the medical records sought by Respondent are part of the public record in Relator's divorce and child custody case. In Turner v. Turner, 445 So.2d 35, 37 (La.App. 4th Cir.1984), this Court noted:
The trial court heard testimony regarding the mental health of the mother [Relator herein], Helen. That testimony indicated that her condition had been stable for some time.
*1102 The Louisiana Supreme Court granted writs on the custody issue and noted:
[F]ollowing the divorce, Helen Turner was judicially committed to a psychiatric hospital in Dallas, Texas; since her release she has been taking medication and undergoing regular therapy to help control her condition. Turner v. Turner, 455 So.2d 1374, 1375 (La.1984).
Relator's ex-husband, Emile Turner, Jr., had filed several rules for contempt against Relator, according to the Supreme Court, "alleging, inter alia, that Helen harassed him and his employees at his place of business, that she improperly moved back into the community domicile, and that she violated several court orders relating to visitation rights and child custody." Id.
The medical records introduced in the divorce/custody proceedings are now matters of public record, and Relator's privilege as to those records has been waived. Applying the Smith principles, partial disclosure of these records in discovery or at trial is deemed a waiver of all of the communication on the subject. 513 So.2d at 1144; Stumpf v. Stumpf, 613 So.2d 683, 685 (La.App. 5th Cir. 1993).
Accordingly, we deny Relator's application. We decline to exercise our supervisory jurisdiction to review the trial court's judgment dismissing Relator's reconventional demand without prejudice on Relator's motion. Relator has adequate remedy in the trial court.
WRIT DENIED.
NOTES
[1] La.R.S. 13:3734(B) provides that in noncriminal proceedings, testimonial privileges, exceptions, and waiver with respect to communications between a health care provider and his patient are governed by the Louisiana Code of Evidence. Section 9 of Acts 1992, No. 376 (section 1 of which enacted Chapter 5, "Testimonial Privileges" of the Code of Evidence, and sections 2 to 8 of which made conforming amendments, repeals, and authorizations) provides:

"This Act shall be effective on January 1, 1993. However, communications made prior to January 1, 1993, which were subject to a valid claim of privilege under prior law, retain their privileged character unless waived."
[2] The exceptions are cases involving a will contest, a instrument transferring property by a deceased, a death, workers' compensation or a personal injury.