Justice PLEICONES.
I concur in part and dissent in part. I concur in the majority’s affirmance of the recusal ruling but dissent from its affirmance of the contempt/sanctions issue. In my view, this appeal requires we review the merits of the Privilege Order as well as the Dismissal Order. As explained below, I find the Privilege Order is affected by an error of law and would reverse the Dismissal Order’s contempt findings related to that order. Further, I would hold the findings of fact cited in the Dismissal Order in support of the conclusion that appellants were in contempt of the Discovery Order are woefully inadequate and would therefore reverse that contempt holding. Finally, I would reverse the Dismissal Order’s sanctions as the contempt findings cannot stand.
I begin with the majority’s erroneous limitation of the scope of appellant’s appeal. The Dismissal Order begins:
This matter comes before the Court on [Respondents’] two Motions for Sanction ... For the reasons set forth below, the Court grants [Respondents’] motions. The Court finds and hereby declares that [Appellants] are in contempt of court as a result of their willful failure to comply with the Court’s order dated July 28, 2009 [the Privilege Order] and dismiss each of the above captioned actions with prejudice as sanctions for such contempt ... The Court further finds and declares that [Appellants] are in contempt of court for the separate and additional reason that they have willfully disobeyed the Court’s Order dated March 3, 2009 [the Discovery Order].
It is well-settled that a party[22] can obtain review of the merits of a discovery order only after refusing to comply and being held in contempt. On appeal from the contempt order, the contemnor may argue that the contempt finding must be reversed because the underlying discovery order was itself *291 improper. E.g. Grosshuesch v. Cramer, 377 S.C. 12, 659 S.E.2d 112 (2008).
The majority acknowledges that appellants have done exactly what is required of them but concludes that our review is somehow limited. I quote from the majority’s opinion:
Throughout the course of the litigation, the circuit court issued numerous discovery rulings ... [T]o challenge the specific rulings of the discovery orders, the normal course is to refuse to comply, suffer contempt, and appeal from the contempt finding ... Only after Respondents filed a motion for sanctions and Appellants were found to be in contempt of court as part of those sanctions, did they appeal. While this was a final order for purposes of appellate review, as it ordered dismissal of the case [sic], the merits of the underlying discovery orders are not before this Court on appeal.
The majority is simply wrong to hold that appellants are now foreclosed from arguing that the discovery orders upon which the Dismissal Order’s contempt findings and sanctions rest were erroneous. Further, I disagree with the majority’s representation that appellants have only raised a general challenge to the Privilege and Discovery Orders. See fn. 15, supra. Each of the five appellants’ briefs argue the merits of the Privilege Order and the Discovery Order. In each brief, the argument regarding the flaws in the Privilege Order begins on page 12, and of those in the Discovery Order begins on page 27. Appellants’ ability to challenge the specifics of the Discovery Order is limited by the circuit court’s inadequate factual findings.
I fundamentally disagree with the majority’s decision to limit its review of these consolidated appeals.
A. Privilege Order
Appellants contend, and I agree, that the circuit court erred in finding them in contempt for violating the Privilege Order. The Privilege Order was largely predicated on the circuit court’s determination that appellants had waived their attorney-client privilege, applying the test for waiver derived from Hearn v. Rhay, 68 F.R.D. 574 (E.D.Wash.1975). The circuit court found the statute of limitations “was a major issue in this case” and held that by putting the statute in issue, *292 appellants “implicitly waived their claims of privilege with respect to documents dated (i.e. created) more than three years prior to the filing of this lawsuit.”
Appellants contend the circuit court erred in adopting the Heam “at-issue” waiver theory in the Privilege Order and that this error requires that we reverse the contempt findings that are based on Heam as well as the sanctions in the Dismissal Order. I agree. •
In my view, the circuit court erred in adopting the Heam at-issue waiver test because this test substantially diminishes the attorney-client privilege without regard to the important public interests that privilege is designed to advance.
South Carolina has long recognized the attorney-client privilege. See, e.g., Clary v. Blackwell, 160 S.C. 142, 149, 158 S.E. 223, 226 (1931). The privilege is grounded
upon a wise public policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to his professional advisor, under the pledge of the law that such confidence shall not be abused by permitting disclosure of such communications.
South Carolina Highway Dept. v. Booker, 260 S.C. 245, 254, 195 S.E.2d 615, 619-20 (1973); see also State v. James, 34 S.C. 49, 57, 12 S.E. 657, 660 (1891) (“[T]he rule of evidence which holds as inviolable professional communications between attorney and client is one of the most important, and in all forms must be maintained in all its integrity.”). The attorney-client privilege is not absolute, rather, its traditional contours balance competing public interests. For example, courts have traditionally held it does not extend to communications in furtherance of criminal, tortious, or fraudulent conduct. Ross v. Medical University of South Carolina, 317 S.C. 377, 384, 453 S.E.2d 880, 884-85 (1994).
While the client may waive the privilege, Drayton v. Industrial Life & Health Ins., 205 S.C. 98, 108, 31 S.E.2d 148, 152 (1944), the rule in South Carolina has been that such a “waiver must be distinct and unequivocal,]” and we have held that a claim of implied waiver should be treated with caution. State v. Thompson, 329 S.C. 72, 76-77, 495 S.E.2d 437, 439 (1998). Notwithstanding that caution must be exercised in finding *293 waiver, it is widely recognized that a client impliedly waives the privilege when he relies on confidential communications with his attorney to make out a claim or defense. See Savino v. Luciano, 92 So.2d 817, 819 (Fla.1957) (“[W]hen a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think that he has waived his right to insist ... that the matter is privileged.”); Pennsylvania v. Harris, 612 Pa. 576, 32 A.3d 243 (2011) (“In-issue waiver occurs when the privilege-holder asserts a claim or defense, and attempts to prove that claim or defense by reference to the otherwise privileged material.”); see also, e.g., Sedeo Int’l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir.1982) (courts find waiver by implication when a client testifies about the attorney-client communication, places the attorney-client relationship at issue, or cites the attorney’s advice as part of a claim or defense). Hearn alters this traditional implied waiver standard.
Hearn summarized the factors common to the exceptions to the rule of privilege as
(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.
68 F.R.D. at 581. This statement of the factors for finding implied waiver dramatically expands the traditional rule. Because the existence of privilege for attorney-client communications has significance only when the information sought to be protected is relevant to a case, and when the opposing party believes access to the information is vital to his defense, factors two and three operate merely to limit waiver of the privilege to the most sensitive of the client’s communications.
The first factor of the Hearn test requires that assertion of the privilege be the result of an affirmative act on the part of the person asserting the privilege, such as by filing suit. As used by the Hearn court and as applied by the circuit court in this case, this factor expands the circumstances in which a party impliedly waives his attorney-client privilege. Rather *294 than being limited to situations in which the client inserts the privileged communications into the controversy, waiver is expanded to situations in which the client raises any issue to which the privileged communications are relevant. As explained below, Hearn has been rejected by most courts and many commentators.
Adoption of the Hearn test virtually eliminates attorney-client privilege in a wide range of cases without taking into account the public policy on which attorney-client privilege is grounded or that the well-settled contours of the attorney-client privilege already balance the competing public interests. See, e.g., In re County of Erie, 546 F.3d 222, 227-29 (2d Cir.2008) discussing Hearn and its critics, rejecting the Hearn test, and holding that when good faith is asserted as a defense, waiver is implied only when the client relies on privileged advice to establish good faith; Kevin Bennardo, At Issue Waiver of the Attorney-Client Privilege in Illinois: An Exception in Need of a Standard, 30 N. 111. U.L.Rev. 553, 561 (2010) (“By focusing on relevancy and fairness, the Hearn test seeks to remedy the ‘problem’ caused by the truth-suppressing effect of the attorney-client privilege. The anticipatory waiver test, on the other hand, seeks to address the problem created by one party selectively relying on a privileged communication while attempting to shield other privileged communications — thereby ‘garbling’ the truth. It is only in this ‘truth-garbling’ scenario, rather than the truth-suppressing scenario (a scenario inherent in all privileges), that waiver of the privilege should be found.” (internal footnote omitted)); Note, Developments in the Law: Privileged Communications, 98 Harv. L.Rev. 1450, 1641^42 (1985) {Hearn concept of unfairness refers to incompleteness of evidence rather than traditional concept in privilege context of unfairness as abuse of a privilege; logic of Hearn leads to “outrageous” results).[23]
*295 Moreover, particularly in the context of a statute of limitations defense, adoption of the Hearn test produces the result that
[i]n virtually every case in which the statute of limitations ... is pleaded as a defense and the client relies on the discovery rule to overcome the limitation period, the opposing party would be able to inquire of the client’s counsel: Did your client tell you anything in confidence about what he or she knew that differs from or contradicts what he or she stated in responses to discovery?
Darius v. City of Boston, 433 Mass. 274, 741 N.E.2d 52, 57 (2001). I agree "with the Darius court that “[t]o permit that kind of inquiry would pry open the attorney-client relationship and strike at the very core of the privilege.” Id. at 56-57.
Because in my view the Hearn at-issue waiver rule sweeps far too broadly, eviscerating the attorney-client privilege without regard to the weighty public interest it serves, the circuit court erred in adopting it in the Privilege Order. The circuit court ordered appellants to produce documents that would have been privileged but for the court’s application of the Hearn at-issue test. It found that appellants had waived attorney-client and “any otherwise applicable privilege” in documents created more than three years before the lawsuit was filed that contained appellants’ litigation and trial strategies “through their actions (e.g. the allegations in the ... Complaints).” The circuit court’s determination in the Dismissal Order that appellants were contumacious in refusing to produce these documents and that the sanctions of dismissal *296 and attorneys’ fees were appropriate depended in part on its determination that appellants had waived all privileges in these documents merely by filing suit. Because the circuit court’s ruling was based on an error of law, i.e. Hearn, I would reverse and remand for the circuit court to consider whether appellants’ other violations of the Privilege Order warrant a finding of contempt. This remand necessarily requires reconsideration of the scope of any sanctions.
B. Discovery Order
Appellants also contend they should not have been found in contempt and sanctioned for violations of the Discovery Order. I agree with appellants that the flaws in the Dismissal Order finding appellants in violation of the Discovery Order require we reverse the Dismissal Order on this ground as well.
I agree with appellants that the trial judge’s specifications of deficiencies in their compliance with the Discovery Order are simply too vague, and rely too heavily on mere references to memoranda prepared by respondents’ counsel,[24] to support the finding of contempt. Moreover, the decision to dismiss the cases and impose other sanctions for noncompliance with discovery “should be imposed only in cases involving bad faith, willful disobedience, or gross indifference to the opposing party’s rights.” McNair v. Fairfield Cty., 379 S.C. 462, 466, 665 S.E.2d 830, 832 (Ct.App.2008) (internal citations omitted). Here, the circuit court’s findings that appellants’ conduct rose to this level are inexorably tied to its findings regarding disobedience of the wrongfully decided Privilege Order.
I would reverse the Dismissal Order and remand, but affirm the recusal ruling as I find no evidence of judicial prejudice in this record. State v. Howard, 384 S.C. 212, 682 S.E.2d 42 (Ct.App.2009). It is patent that these cases have been pending far too long, and that appellants share in the responsibility for the delay. I am optimistic that the parties and trial judge will work diligently to bring these cases to speedy and appropriate resolutions upon remand.

. I note the majority cites the non-party discovery appeal rule from Ex parte Whetstone, 289 S.C. 580, 347 S.E.2d 881 (1986).

. For additional criticism of Hearn and its progeny, see Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 413 (D.Del.1992) ("The core problem, according to this line of reasoning [criticizing Heam\, is that expansive language for determining implied waiver leads to a type of ad hoc determination that ignores the system-wide role of the attorney-client privilege and undermines any confidence that parties can place in that privilege. These authorities contend that extremely liberal waiver rules increase litigation costs and judicial time spent on discovery disputes, favor the wealthiest litigants, undermine *295 the values served by the privilege rules, and vary according to the identity of the litigants and their purported need for privileged information.” (internal citations omitted)); Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1 (D.D.C.2010); United States v. Ohio Edison Co., No. C2-99-1181, 2002 WL 1585597 (S.D.Ohio July 11, 2002); Mortgage Guar. & Title Co. v. Cunha, 745 A.2d 156 (R.I.2000); Public Service Co. of New Mexico v. Lyons, 129 N.M. 487, 10 P.3d 166 (N.M.Ct.App.2000); Wisconsin v. Hydrite Chem. Co., 220 Wis.2d 51, 582 N.W.2d 411 (Wis.Ct.App.1998); Wardleigh v. Second Jud. Dist. Ct., 111 Nev. 345, 891 P.2d 1180 (1995); Aranson v. Schroeder, 140 N.H. 359, 671 A.2d 1023 (1995); RhonePoulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir.1994); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 115 F.R.D. 308 (N.D.Cal.1987); and Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138 (La.1987).

. Each of the five findings of contempt in the Dismissal Order is supported only by citation to a memorandum prepared by respondents. See Higgins v. Med. Univ. of South Carolina, 326 S.C. 592, 486 S.E.2d 269 (Ct.App.1997) (cautioning against reliance on factual statements in memoranda submitted by counsel).