Walter SORENSON, Jr., Sarah
O. Sorenson, Plaintiffs,

v.

H & R BLOCK, INC., H & R Block Tax
Services, Inc., H & R Block Eastern Tax
Services, Inc., Karl Brandenburg, Defendants.

CIV.A. No. 99–10268–DPW.

United States District Court,
D. Massachusetts.

Nov. 6, 2000.

Brian G. Cafferty, Gelb & Gelb LLP, Paul M. Cimino, Kathleen B. Hogan, Adrienne M. Markham, Goulston & Storrs, Richard M. Gelb, Daniel C. Hohler, Gelb & Gelb, Boston, MA, for defendants.

Paul J. Klehm, James B. Krasnoo, Andover, MA, for plaintiffs.

Anne G. Depew, Assistant U.S. Attorney, Boston, MA, interested party.

Michael J. Pineault, U.S. Attorney's Office, Boston, MA, interested party.

## MEMORANDUM AND ORDER ON DE-FENDANTS' MOTION TO COMPEL PLAINTIFFS' PRODUCTION OF DOCUMENTS (# 25)

COLLINGS, Chief United States Magistrate Judge.

On February 9, 1999, Plaintiffs Walter F. Sorenson, Jr.[1] and Sarah O. Sorenson filed a Verified Complaint against Walter Sorenson's tax preparer, H & R Block, Inc., including its related entities and an employee, one Karl Brandenburg.[2] The Complaint is premised upon actions commencing in March 1994 and concern Defendants' allegedly unauthorized disclosure of Walter Sorenson's tax return information. Plaintiffs contend that Defendants' allegedly unlawful conduct prompted the Internal Revenue Service (I.R.S.) and the Massachusetts Department of Revenue (D.O.R.) to initiate audits and investigations, both criminal and civil, of Walter Sorenson. The jurisdiction of this Court is premised upon the complete diversi-

---

1. Hereinafter, "Walter Sorenson" or "Mr. Sorenson."

2. Hereinafter, "the Defendants."

ty of the citizenship of the parties pursuant to 28 U.S.C. § 1332.

 In 1996, Mr. Sorenson retained John R. Cox, Esquire, to represent him in connection with his dealings with the I.R.S. and D.O.R. Defendants seek documents from Attorney Cox's files which Mr. Sorenson claims are protected by the attorney-client privilege. Defendants, relying almost exclusively on the First Circuit's decision in *Greater Newburyport Clamshell Alliance v. Public Service Company of New Hampshire*, 838 F.2d 13 (1st Cir.1988),[3] take the position that by bringing the claims in the instant lawsuit, Mr. Sorenson has waived the privilege. Mr. Sorenson disagrees.

Perhaps it is best to start with a discussion of the *Greater Newburyport* case.[4] The plaintiffs in that case brought a civil case setting forth several causes of action under the Federal civil rights laws against the Public Service Company of New Hampshire, one of its employees and various members of the New Hampshire State Police. Public Service Company was and is the owner and operator of the Seabrook nuclear power plant. *Greater Newburyport*, 838 F.2d at 15. The plaintiffs had been arrested during a protest at the plant and had been charged with criminal trespass; they hired an attorney to represent them. *Id.* In the civil case, the plaintiffs alleged Public Service Company and the State Police conspired to get an undercover agent to infiltrate their organization, and having succeeded, the informant attended meetings between the plaintiffs and their lawyers who were preparing the defense of the criminal charges. *Id.* at 16.

The Court wrote that in the civil rights case:

The critical sixth amendment claim was that [the defendants] used the information provided by [the informant] to prepare testimony for the prosecution at the upcoming [criminal trial].

*Greater Newburyport*, 838 F.2d at 16.

When it was revealed that one of the defendants had been a police informant, the criminal charges were dismissed. *Id.*

During the course of discovery in the civil rights case, the defendants subpoenaed records from one of the attorneys who represented the plaintiffs in the criminal case. *Greater Newburyport*, 838 F.2d at 16. The District Court ruled that the plaintiffs had waived their attorney-client privilege by bringing the civil rights suit. *Id.* The attorney appealed.

The issue before the Court of Appeals was "whether a party implicitly waives privileged information by litigating his claims in a civil case" and what test to apply to determine if a waiver occurred. *Id.* at 17. It answered the question as follows:

[A] court should begin its analysis with a presumption in favor of preserving the privilege. In a civil damage action, however, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails. The burden on the defendant is proportional to the importance of the privilege. The court should develop the parameters of its discovery order by carefully weighing the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct its most effective defense.

*Greater Newburyport*, 838 F.2d at 20.

In accord with this prescribed *modus operandi*, the Court first presumes that the privi-

---

**3.** Hereinafter, *"Greater Newburyport"* or *"Greater Newburyport* case."

**4.** It should be noted that in the *Greater Newburyport* case, jurisdiction was predicated upon the claim under 42 U.S.C. § 1983, a federal question, and the issue of whether the attorney-client privilege was waived was determined under federal common law. Rule 501, Fed.R. Evid.

However, jurisdiction in the instant case is predicated on diversity of citizenship, and, thus, Massachusetts law governs the privilege issue. *Id.* Since neither party has suggested that the law of Massachusetts is any different than the federal common law set forth in the *Greater Newburyport* case, I shall consider that case as controlling, as indeed counsel for the parties has done.

lege protects disclosure of communications between Attorney Cox and Mr. Sorenson. Second, the Court must determine if "...the plaintiff's civil claim, and the probable defenses thereto, are *enmeshed* in important evidence that will be unavailable to the defendant if the privilege prevails." *Id.* (emphasis supplied) In the *Greater Newburyport* case, there was clear "enmeshing" since the claims themselves involved a violation of the attorney-client relationship. Thus, as the Court of Appeals noted, the defendants in that case "need to know what actually transpired at the meetings in order to establish why [the informant] could not suddenly cease to attend them and thereby possibly betray his true identity" and to find out if he "... was actually privy to confidential information at these meetings." *Id.* at 21.

The question of whether there is an "enmeshing" of privileged information and important evidence for the defense is quite different in the instant case. As I understand the Court of Appeals, "enmeshing" means something more than that the evidence of what was communicated between attorney and client is relevant to the subject matter of the action. For example, any discussions between a putative plaintiff and his attorney before suit is filed may be quite relevant to the case and is unavailable to the defendants because of the privilege, but that evidence is not "enmeshed" in the claim. What the Court of Appeals meant by "enmeshed" is that the privileged information itself has independent relevance to the claim or defense because of its privileged status. On the facts of the *Greater Newburyport* case, it was the fact that the discussions in which the informant participated were privileged which gave rise to the claim of deprivation of Sixth Amendment rights.

This is not the situation in the instant case. What the Defendants are alleged to have done occurred well before Mr. Sorenson retained Attorney Cox. So far as I can discern, Mr. Sorenson retained Attorney Cox in December, 1996 after he was notified that the I.R.S. was looking into his 1992 and 1993 returns. In March, 1997, Attorney Cox's retention expanded to include representation in connection with the 1994 and 1995 returns; in the summer of 1997, it expanded further to representing Mr. Sorenson in connection with the I.R.S.'s criminal investigation of Mr. Sorenson. All of the alleged tortious activity occurred well before then, and the communications between Mr. Sorenson and Attorney Cox do not in any way give rise to the claims which Mr. Sorenson brings in this case against the Defendants. In this situation, I do not see the privileged information as being "enmeshed" in important evidence as was the case in the *Greater Newburyport* case. Put another way, by bringing the claims asserted in this lawsuit, Mr. Sorenson has not made the communications between himself and Attorney Cox "... a material issue in a judicial proceeding" so as to waive the privilege. *United States v. Mierzwicki,* 500 F.Supp. 1331, 1335 (D.Md.1980). *See also Sax v. Sax,* 136 F.R.D. 542, 543 (D.Mass. 1991); *Sax v. Sax,* 136 F.R.D. 541, 542 (D.Mass.1991).

The conclusion is buttressed by the Defendants' asserted need for the privileged material. In their memorandum,[5] they assert that:

> [A] number of Walter Sorenson's activities, independent of any actions by any of the defendants, appear to be significant factors in the audits. [footnote omitted] It is highly likely that Attorney Cox's files will help reveal the extent to which such independent actions by Walter Sorenson influenced the outcome of the audits and/or caused the Sorensons their alleged damages.

Although it is entirely conceivable that communications between Mr. Sorenson and Attorney Cox concerned Mr. Sorenson's other activities, the communications have no independent material relevance. The activities themselves have relevance, and the Defendants have been free to question Mr. Sorenson about these activities and have been able to procure I.R.S. documents which bear on the reasons for the audit.

---

**5.** Defendants' Memorandum in Support of Their Motion to compel Plaintiffs' Production of Documents (# 26) at p. 4.

After the instant motion was filed, the Defendants deposed Attorney Cox on two occasions, November 30, 1999 and May 26, 2000. I have read those depositions, and I find that, without revealing confidential communications between himself and Mr. Sorenson, Attorney Cox answered questions about what positions he took with the I.R.S. and the reasons why, the factual basis for concluding that Defendant Brandenburg was the snitch and the fee arrangement he had with Mr. Sorenson for his representation. These subject areas pretty well cover all that the Defendants asserted they needed.[6]

Accordingly, I sustain the claim of attorney-client privilege as to all documents on the Second And Third Amended Privilege Logs.[7] I order the production of 9136 because no privilege or protection is claimed with respect to that document.

■ The analysis is different when it comes to documents which are claimed to be protected by the work-product doctrine. Some of them involve notes taken by Attorney Cox in his conversations with third parties, including representatives of the I.R.S. and D.O.R. Attorney Cox has already testified about these conversations. Other documents include personal notes which Attorney Cox made with respect to subjects on which he testified at deposition. Since the plaintiffs have indicated that Attorney Cox will be a witness at trial, the documents are prior statements of a trial witness. The Defendants' need for them is manifest. I shall order their production.

Accordingly, it is ORDERED that Defendants' Motion to Compel production of Documents (# 25) be, and the same hereby is, ALLOWED as to document 9136 and all documents which have been withheld solely on work-product grounds. Production is to be made *on or before the close of business on Monday, November 20, 2000.* In all other respects, it is ORDERED that Defendants'

Motion to Compel Production of Documents (# 25) be, and the same hereby is, DENIED.

---

**6.** Defendants' Memorandum in Support of Their Motion to Compel Plaintiffs' Production of Documents (# 26) at p. 4. The Memorandum was filed on November 2, 2000, a few weeks before the first deposition.

**7.** I have reviewed all the documents *in camera.* However, most are illegible. Thus, I have relied on the description provided in the log which is sufficient to make the judgment that the documents are privileged.