Alexander M. SHUKH, Plaintiff,

v.

SEAGATE TECHNOLOGY, LLC, Seagate Technology, Inc., Seagate Technology, and Unknown Owners and Assignees, Seagate Technology, PLC, Defendants.

Civil No. 10–404 (JRT/JJK).

United States District Court,
D. Minnesota.

June 29, 2012.

Constantine John Gekas and John C. Gekas, Gekas Law, LLP, Chicago, IL; James H. Kaster and Katherine M. Vander Pol, Nichols Kaster, PLLP, Minneapolis, MN, for Plaintiff.

Calvin L. Litsey, Chad Drown, Charles F. Knapp, David J.F. Gross, Elizabeth Cowan Wright, and Jeya Paul, Faegre Baker Daniels LLP, Minneapolis, MN, and Sarah E. Benjes, Faegre Baker Daniels L.L.P., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER AFFIRMING THE DECEMBER 15, 2011 ORDER OF THE MAGISTRATE JUDGE

JOHN R. TUNHEIM, District Judge.

Shukh objects to the Magistrate Judge's Order (Docket No. 251) granting in part and denying in part his motion to compel document production. The Court has carefully considered Shukh's timely objections. Because the Court finds that the Magistrate Judge's conclusions are neither clearly erroneous nor contrary to law, the Court will overrule Shukh's objections. *See* Fed.R.Civ.P. 72(a).

### BACKGROUND [1]

Shukh worked at Seagate from 1997 until 2009. (Am. Compl. ¶¶ 33, 34, Apr. 7, 2010, Docket No. 7.) Following his notice of termination, Shukh made copies of over 49,000 pages of Seagate's documents. (Hr'g Tr. at 36:10–16, Sept. 28, 2010, Docket No. 64.) Shukh alleges that these documents are proof of his inventorship rights at issue in claims against Seagate. (Am. Compl. ¶ 330.) On November 30, 2011 the Court ordered Shukh to return all of the documents that he had copied and taken from Seagate prior to and following his

---

1. For a more complete factual recitation, see the Court's November 30, 2011 Opinion at 2–

5. (Docket No. 242.)

termination notice. (Mem. Op. & Order at 21, Docket No. 242.) In response to discovery requests, Seagate produced documents to Shukh including some that Shukh had taken from Seagate. Among the documents Seagate produced were Shukh's five invention disclosures over which Seagate had previously asserted privilege.

Seagate, however, continued to withhold 575 documents that Shukh requested on the basis of privilege. Shukh moved to compel Seagate to produce the allegedly privileged documents, and the Magistrate Judge granted that motion in part. (Order and Mem., Dec. 15, 2011, Docket No. 251 [hereinafter "Order"].) Specifically, the Magistrate Judge found that—in light of Seagate's production of Dr. Shukh's invention disclosures—Seagate had waived privilege over communications related to the subject matter of the invention disclosures. (*Id.* at 10.) The Magistrate Judge rejected Shukh's other waiver theories. Shukh now objects.

## ANALYSIS

### I. STANDARD OF REVIEW

The Court must set aside those portions of the Magistrate Judge's order that are "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r,* 79 F.3d 726, 728 (8th Cir.1996) (quotation marks and citation omitted). "A decision is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Knutson v. Blue Cross and Blue Shield of Minn.,* 254 F.R.D. 553, 556 (D.Minn.2008).

### II. SUBJECT MATTER WAIVER

■ The Magistrate Judge held that Seagate's production of the disclosure forms constituted waiver of privilege over the subject matter of those disclosures. Arguing on appeal that the scope of this waiver was too narrow, Shukh continues to seek "all communications regarding inventorship for all inventions," whether Shukh's or others'. (Pl.'s Objections at 16–17, Dec. 28, 2011, Docket No. 252.) Shukh, however, offers no legal argument as to why the scope of subject matter waiver articulated by the Magistrate Judge is contrary to law. Rather, Shukh simply states that because the case involves inventorship, waiver should include all communications about inventorship. (Pl.'s Objections at 17.)

Federal common law governs privilege issues with respect to federal claims. Fed. R.Evid. 501. The proper scope of subject matter waiver is a fact-intensive inquiry. *Fort James Corp. v. Solo Cup,* 412 F.3d 1340, 1349–50 (Fed.Cir.2005) ("There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."). The Magistrate Judge carefully weighed the circumstances and competing interests at stake in concluding that a limited subject-matter waiver was appropriate. (Order at 5–10.) After reviewing the record, the Court is convinced that the Magistrate Judge's conclusion is neither clearly erroneous nor contrary to law. The invention disclosures that Seagate produced describe inventions that Shukh claims he made while at Seagate. It is far from clear why, as Shukh argues, that limited subject matter should be expanded to embrace **all** inventions. Moreover, Federal Rule of Evidence 502(a) speaks in terms of the subject matter of the disclosed and undisclosed communications, not—as Shukh would have it—the subject matter of the case as a whole. Shukh's request to expand the scope of

waiver to include "all communications about inventorship—Plaintiff's or other[s]'," (Pl.'s Objections at 17), will therefore be denied.

## A. Common Interest Doctrine

The Magistrate Judge found the common interest doctrine and joint representation privilege inapplicable to Shukh's motion. (Order at 10–11.) Shukh appears to argue that the Magistrate Judge's observation, in a different part of the Order, that Shukh and Seagate's interests were "aligned" means that they shared a common legal interest entitling Shukh to the documents he requests.[2]

 Two concepts are at play here. First, in order to implicate the joint representation privilege, two or more clients must consult an attorney on matters of common interest; the communications between the clients and the attorney are privileged as against third parties, but not among the joint clients. *Cavallaro v. United States*, 284 F.3d 236, 249–50 (1st Cir.2002). This privilege only attaches if an attorney-client relationship is formed. *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 167 F.Supp.2d 108, 116 (D.Mass.2001). The "common interest" doctrine, by contrast, is "an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party," *Cavallaro*, 284 F.3d at 250, and it applies if the privilege-holder discloses privileged documents to a third party with which it shared a common interest. *Merck Eprova AG v. ProThera, Inc.*, 670 F.Supp.2d 201, 211 (S.D.N.Y.2009). The doctrine permits disclosure without waiver as long as the party claiming the exception demonstrates that the parties communicating: "(1) have

a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." *Merck Eprova AG*, 670 F.Supp.2d at 211; *see also* 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5505 (1st ed. 1986) (discussing difference between common interest doctrine and joint representation, and courts' increased blurring of the distinction and nomenclature).

 Disentangling these two concepts, the Magistrate Judge held that Shukh did not have an attorney-client relationship with Seagate's attorneys, and thus no joint privilege attached. That decision was not clearly erroneous or contrary to law. An employee-inventor required to assign his patent rights does not generally have an attorney-client relationship with the company's patent counsel. *Univ. of W.Va. v. VanVoorhies*, 278 F.3d 1288, 1303–04 (Fed.Cir.2002) (law firm's representation of university, and prosecution of patent in inventor's name, did not give rise to an attorney-client relationship between law firm and the inventor); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336–37 (Fed.Cir. 1988) (no attorney client relationship where inventor-employee merely assisted company's attorneys in prosecuting the patent application"). This Court has previously determined that Shukh's employment agreement automatically assigned his patent rights to Seagate. (Mem. Op. & Order at 12, 2011 WL 1258510, Mar. 30, 2011, Docket No. 140.) And Shukh has not demonstrated that he sought or received legal advice from Seagate's lawyers in an individual capacity giving rise to an attorney-client relationship outside the patent prosecution context. *See Manion*

---

**2.** The Court notes, however, that Shukh's argument is far from clear, and at times seems deliberately opaque: "whether as a privilege, exception, or waiver, Dr. Shukh's access to his own disclosures must arise from that common interest." (Pl.'s Reply at 4, Feb. 9, 2012, Docket No. 285.)

*v. Nagin,* 394 F.3d 1062, 1069 (8th Cir. 2005) (finding attorney-client relationship between employee and corporate counsel where, among other reasons, attorney advised employee on personal issues); *United States v. Int'l Bhd. of Teamsters,* 119 F.3d 210, 216 (2d Cir.1997) (discussing circumstances under which an attorney-client relationship may be formed between a corporate employee and the corporation's counsel). The privilege was therefore Seagate's alone, and Shukh falls squarely within these cases holding that an inventor-employee assisting the company in prosecuting a patent is not a client of the company's lawyers. The joint representation privilege does not apply.

■ The common interest doctrine is also inapplicable. That doctrine would operate to preserve privilege if the privilege-holder—here Seagate—decided to share privileged documents with a third party with which it shared a common interest. Shukh's argument that the Mag-istrate Judge's observation of Shukh and Seagate's alignment of interest **requires** disclosure confuses the common interest doctrine and the joint representation privilege.[3] The common interest doctrine would preserve privilege, not compel Seagate to share otherwise privileged documents. As to the joint representation privilege, even if Shukh and Seagate's interests were aligned for the purpose of applying for patents, this kind of commonality of interest does not create an attorney-client relationship between Shukh and Seagate's lawyers in which to root compelling disclosure of the documents for lack of privilege. *See e.g., Van Voorhies,* 278 F.3d at 1304 (prosecuting patent in name of inventor did not give rise to attorney-client relationship between institution's lawyers and inventor). To summarize, the absence of an attorney-client relationship is dispositive of the joint representation privilege, and the common interest doctrine does not apply.[4] Shukh's objections are overruled.

---

3. In the context of Shukh's failure-to-advise argument, the Magistrate Judge held:

> The Court concludes that Seagate's attorneys had no duty to advise Dr. Shukh that they only represented Seagate because at the time of the various communications at issue, Seagate would not have known that Dr. Shukh's interests were adverse to Seagate's. Both Seagate's and Dr. Shukh's interests were aligned in that they both wanted to get the inventorship of the patents right.

(Order at 14.)

4. Shukh insists that *In re Regents of University of California* dictates a contrary outcome. 101 F.3d 1386, 1389 (Fed.Cir.1996) ("A community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents.") (quoting *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84–C–5103, 1987 WL 12919, *1 (N.D.Ill. June 19, 1987)). *In re Regents* dealt with the common interest doctrine, though the case speaks in terms of the "joint client doctrine." *See* 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5505 at 556 (1st ed. 1986) (noting courts' increasing conflation of terminology). In that case Genetech sought discovery of privileged documents from Lilly on the ground that Lilly had waived privilege by sharing the documents with a third party. *In re Regents,* 101 F.3d at 1388–89. The issue was thus whether Lilly and the third party shared a common interest—i.e. were functionally joint clients—such that sharing the documents did not amount to waiver of privilege. *Id.* at 1389–90. Because Lilly and the third party had a "potentially and ultimately exclusive ... license agreement[,]" the Federal Circuit held that their interests were substantially identical, and therefore that the documents remained privileged. *Id.* at 1390.

In re Regents thus stands for the proposition that sharing privileged documents with a third party with which the privilege-holder has a common legal interest does not necessarily waive the privilege. It does not suggest that the privilege holder must share documents with any party with which it has a

## B. At–Issue Waiver

The Magistrate Judge held that Seagate did not waive privilege by placing the protected information at issue. (Order at 11–12.) A waiver of privilege may be implied where "through [an] affirmative act, the asserting party has placed the protected information at issue by making it relevant." *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 134–35 (D.Minn. 1995). At issue waiver is commonly found where either proof of a party's legal contention implicates privileged information (as in, for example, a legal malpractice action), or a client's testimony refers to a specific privileged document. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir.2000). But merely denying a plaintiff's allegations does not place privileged information at issue. *See Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) (explaining that a party places privileged information in issue by affirmatively asserting a claim or defense and attempting to prove it by disclosing or describing privileged communications). Shukh argues on appeal that "Seagate has done more than merely deny [Shukh's] allegations" because Seagate has asserted affirmative defenses and opposed Shukh's summary judgment motion. (Pl.'s Objections at 6.)

The Magistrate Judge's determination that Seagate had not put inventorship in issue but merely denied Shukh's allegations was correct; Shukh does not point to any privileged communications placed in issue by Seagate's mere denial. None of Seagate's affirmative defenses puts the substantive question of inventorship at is-sue, (Am. Answer and Counterclaims at 122–24, June 3, 2011, Docket No. 155), and Shukh does not point to any protected documents that Seagate allegedly placed at issue. As to Seagate's opposition to Shukh's summary judgment motion, Seagate opposed the motion on inventorship principally because it believed Shukh had failed to meet his burden. (Seagate's Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. at 1, Nov. 15, 2010, Docket No. 104.) This opposition does not affirmatively place privileged information in issue, and is thus insufficient to waive attorney-client privilege.[5] The Magistrate Judge's decision is not clearly erroneous or contrary to law and Shukh's objections will therefore be overruled.

## C. Unauthorized Practice of Law

The Magistrate Judge rejected Shukh's argument that Seagate waived privilege because its General Counsel was not a member of the California or Minnesota bars. "[F]or purposes of the privilege," a lawyer is a "person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation." 3 Weinstein's Federal Evidence § 503.12[1] (Joseph M. McLaughlin, ed., 2d ed. 2002.) A party "may assert the privilege with respect to correspondence to or from its patent counsel despite the fact that that counsel was not admitted to the bar of the state in which he was located." *Paper Converting Mach. Co. v. FMC Corp.*, 215 F.Supp. 249, 251 (E.D.Wis. 1963); *see also Panduit Corp. v. Burndy Corp.*, 172 U.S.P.Q. 46 (N.D.Ill.1971). It is

---

common interest. In any event, the case is inapplicable because Shukh has no ownership interest in the patent akin to the licensor/licensee relationship in *Regents*. (Order, Docket No. 140, at 12. ("[T]here is no path to arrive at the conclusion that the parties have co-ownership of the patent: Seagate is the sole owner."))

**5.** The inequitable conduct cases Shukh cites are inapposite because in each case the party affirmatively placed privileged communications at issue. *See e.g., Starsight Telecast v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653–54 (N.D.Cal.1994).

not disputed that Seagate's General Counsel, though not admitted in California or Minnesota, is admitted to practice in multiple states. (Pl.'s Objections at 8.)

Shukh has not shown that any of the cases on which he relies should alter the Magistrate Judge's conclusion.[6] Because the Magistrate Judge's conclusion is not contrary to law, Shukh's objections will be overruled.

### D. Waiver by Delay

■■■ The Magistrate Judge rejected Shukh's argument that Seagate waived its privilege by delaying sixteen months before seeking legal enforcement of return of the documents "for the same factual reasons that the District Court concluded in its November 30, 2011 Order." (Order at 12.) Shukh now argues that the factual basis of that Order was clearly erroneous because Shukh "does not believe that there is any evidentiary support in the record" for the idea that Seagate lawyers didn't know how many documents Shukh retained. (Shukh's Reply on His Objection to Magistrate Judge's Opinion at 5, Feb. 9, 2012, Docket No. 285.)

In its November 2011 Order, the Court concluded that Seagate's delay in seeking judicial enforcement did not waive its right to enforce the document return provision of the contract because (1) Seagate "sought enforcement of the document return provision of the contract at regular intervals since Shukh's termination in 2009," (2) Seagate made numerous requests for return of the documents which Shukh refused, and (3) Seagate claimed that it was unaware it did not have full knowledge of how many documents were involved until a September 2010 hearing, after which it timely filed a counterclaim for the return of documents. (Mem. Op. & Order at 14–15, Docket No. 242.)

Even accepting Shukh's sole evidentiary objection as true—that no record evidence supports Seagate's assertion that it was

---

6. For example, the attorney in *Financial Technologies International* was not admitted to the bar in any state. *Fin. Techs. Int'l v. Smith*, 49 Fed. R. Serv.3d 961, 2000 WL 1855131, at *3, *3–7, 2000 U.S. Dist. Lexis 18220, *10, *11–20 (S.D.N.Y. Dec. 19, 2000) (dealing principally with whether a client's reasonable belief that she was speaking with an attorney was sufficient to trigger privilege under New York law). And *United Shoe v. United Shoe Mach. Corp.* does not conclude, as Shukh argues, that communications with in-house patent counsel not admitted to the bar of the state where they worked fall outside the privilege. 89 F.Supp. 357, 360 (D.Mass.1950). Rather, *United Shoe* merely reasoned that lawyers resident in one state but barred elsewhere, and who had never received a license to practice in the state of their residence, were not acting as the defendant's attorneys there. *Id.* In other words, the issue was whether the lawyers were acting as lawyers in the state, not the relevance of their state of bar admission to the privilege inquiry. *See id.* Indeed, the Court observed that the privilege may well apply to a visiting attorney from another state. *Id.*

Finally, Shukh focuses on dicta from *Zenith Radio Corp. v. Radio Corp. of America* which states that while bar membership should generally be of the court of the area where services are rendered, it is not a requirement for visiting corporate counsel "for which local authorities do not insist on admission to the local bar." 121 F.Supp. 792, 794 (D.Del. 1954). Shukh reasons that because California **does** require bar admission for corporate counsel, which Seagate's corporate counsel did not obtain, the privilege does not apply. The Magistrate Judge's refusal to adopt this apparently novel interpretation of *Zenith Radio* was not contrary to law. *See, e.g., Panduit Corp.*, 172 U.S.P.Q. at 47, ("While it appears that defendant's house counsel is not admitted to practice law in the state of his employment, Connecticut, he is admitted to the bar of New York. This is sufficient for the purpose of the attorney-client privilege."); *Paper Converting Mach. Co.*, 215 F.Supp. at 251 ("We believe that the defendant may assert the privilege with respect to correspondence to or from its patent counsel despite the fact that that counsel was not admitted to the bar of the state in which he was located").

unaware of how many documents Shukh took until September 2010—the Court finds that Seagate's regular attempts to enforce the document return provision, numerous requests for the return of documents, and attempt to prevent Shukh from taking the documents following his termination notice constitute sufficient measures to preserve privilege under the circumstances.

The cases Shukh cites do not direct a contrary outcome. Unlike in *Bowles,* where the employer took **no** measures to preserve confidentiality of its documents before the employee took them, *Bowles v. Nat'l Ass'n of Home Builders,* 224 F.R.D. 246, 256 (D.D.C.2004),[7] Shukh's employment contract contained a document return provision and Shukh's supervisor confronted him about taking confidential information prior to his last day in the office. (Aff. of Kenneth Allen, Feb. 9, 2012, Docket No. 286–2.) Shukh also does not dispute that, since 2009, Seagate has repeatedly attempted to enforce the document return provision of Shukh's contract. Because some evidence in the record shows that Seagate took reasonable measures to prevent disclosure of the privileged documents, the Court declines to find that Seagate's delay in seeking legal remedies constituted waiver of privilege. *See Bowles,* 224 F.R.D. at 256 n. 13 ("Those courts that have preserved the privilege in documents retained by a former employee have generally done so where there are at least some facts in the record to indicate that the employer had taken reasonable measures to prevent the disclosure of the document."); *compare United States ex rel. Mayman v. Martin Marietta Corp.,* 886

F.Supp. 1243, 1246 (D.Md.1995) (declining to find waiver where employer kept documents in secure location, only allowed access to employees legally obligated to maintain confidentiality, and executed termination statement containing document return provision); *with IMC Chems., Inc. v. Niro Inc.,* No. 98–2348, 2000 WL 1466495, at *26–27, 2000 U.S. Dist. LEXIS 22850, at *80–81 (D.Kan. July 19, 2000) (finding waiver where employment agreement did **not** contain a document return provision, and employer took "limited, if any" precautions to maintain confidentiality). Moreover, the Court also agrees with the Magistrate Judge that to the extent the documents can be seen as stolen, they should not lose the protection of privilege. *See In re Grand Jury Proceedings Involving Berkley and Co., Inc.,* 466 F.Supp. 863, 867 (D.Minn.1979). For the foregoing reasons, Shukh's objections are overruled.

### E. Conflict of Interest

■ The Magistrate Judge rejected Shukh's argument that Seagate's lawyers' failure to advise him to get his own lawyer waived privilege. (Order at 14.) This conclusion rested in part on the determination that Seagate did not know that Shukh's interests were adverse to Seagate's at the time of the relevant communications. (*Id.*) Absent such knowledge, the Magistrate Judge reasoned, Seagate's attorneys had no duty to advise Shukh that they only represented Seagate. (*Id.*) Shukh now disputes that Seagate did not know Shukh's interests were adverse, and proffers new evidence not presented to the Magistrate Judge purporting to show that Seagate **was** aware that Shukh's interests were adverse to Seagate's at the time of the communications. (Pl.'s Reply at 6–7.)[8]

---

**7.** Crucially, the employer "did not even take the simple precaution of placing a provision in its executive employment agreement requiring the surrender of any documents ob-

tained in the course of employment." *Bowles,* 224 F.R.D. at 256.

**8.** Seagate, meanwhile, argues that Shukh's statements to the effect that he was concerned

It is not necessary to resolve this dispute. Regardless of whether Seagate's lawyers knew of any adversity of interests, and were thus under an ethical duty to advise Shukh to secure his own counsel, failure to do so did not waive the company's privilege. *See United States v. Int'l Bhd. of Teamsters,* 119 F.3d 210, 217 (2d Cir.1997) (observing that employer's potential violation of ethical rules to clarify potential conflict between the organization and its employee does not impact analysis of attorney-client privilege). None of the cases Shukh cites stand for the proposition that failure to advise an employee to seek independent counsel—even if in violation of a state's ethical rules—waives privilege. The Magistrate Judge's rejection of Shukh's failure-to-advise theory of waiver was therefore not contrary to law, and Shukh's objections will be overruled.

### F. Constitutional Argument

The Magistrate Judge rejected Shukh's argument that Federal Rule of Evidence 501 is unconstitutional to the extent it deprives inventors of the constitutional right to their inventions because no legal authority supports that position. (Order at 15.) Shukh now argues that while "[t]his precise issue may not have been decided by a Court before, ... the Constitution and implementing decisions of the Supreme Court supply the constitutional

standard of decision urged by the Plaintiff." (Pl.'s Objections at 14.)

The Court is not persuaded. Shukh seems to argue in broad strokes that because the patent clause primarily protects inventor's rights, any law detracting from the right of inventorship is unconstitutional. The Court declines to adopt this novel reading of the patent clause,[9] and the Magistrate Judge's rejection of the argument was manifestly not contrary to law.

### III. CERTIFICATION OF APPEAL

 Shukh requests certification for interlocutory appeal to the Federal Circuit under 28 U.S.C. § 1292(b). A party seeking an interlocutory appeal must establish that (1) there is a controlling question of law, (2) there is a substantial ground for difference of opinion as to that controlling question of law, and (3) an immediate appeal may materially advance the ultimate termination of litigation. *Fenton v. Farmers Ins. Exch.,* No. 07–4864, 2010 WL 1006523, at *1 (D.Minn. Mar. 16, 2010). A motion for certification of interlocutory appeal "must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994).

---

about inventorship of the patents because it was important "to the company business" and that "jeopardize[ing] the validity of these patents ... is obviously not good for the company" are sufficient to support the Magistrate Judge's conclusion. (Seagate's Mem. in Opp'n at 8.)

**9.** Shukh's supplemental authority, which makes the unremarkable observation that "inventorship and ownership are separate issues" does little to clarify the matter. *Beech Aircraft Corp. v. EDO Corp.,* 990 F.2d 1237, 1248 (Fed.Cir.1993). Rather, *Beech* appears to be irrelevant because this Court has not

relied—nor is it now relying—on the distinction between inventorship and ownership to reject Shukh's argument.

The Court previously rejected Shukh's constitutionality argument in its Order on Seagate's motion for summary judgment. (Mem. Op. at 11.) The Court there observed that the constitutionality argument rests on the premise that Shukh is unable to prove his inventorship claims without the documents he requested, and that he cannot obtain them in any other manner. The Court, however, found that Seagate had already provided nearly all of the requested documents in discovery. (*Id.*)

Shukh makes no effort whatsoever to satisfy this standard. He simply "respectfully asks that the matter be certified." (Pl.'s Reply at 7.) The Court declines to certify this Order for appeal to the Federal Circuit because Shukh has failed to carry his burden to establish the above elements.

### ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** plaintiff's objection [Docket No. 252] and **AFFIRMS** the Magistrate Judge's Order dated December 15, 2011.