*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1767**

In re Kathryn M. Truscott f/k/a Kathryn M. Ranheim,
Petitioner

Stacey A. McNeely, et al.,
Respondents,

vs.

Kathryn M. Truscott f/k/a Kathryn M. Ranheim,
Petitioner,

Heartland Information Services, Inc., d/b/a Heartland Investigative Group, et al.,
Respondents.

**Filed May 23, 2016
Writ granted
Smith, Tracy, Judge**

Hennepin County District Court
File No. 27-CV-14-13676

William M. Topka, Robert B. Bauer, Dougherty, Molenda, Solfest, Hills & Bauer, P.A., Apple Valley, Minnesota (for petitioner)

Ryan R. Dreyer, Stacy L. Kabele, Morrison Sund PLLC, Minnetonka, Minnesota (for respondents Stacy A. McKneely, Makenna Borg, Logan E. Borg, and P.B.)

Jessica J. Theisen, Cousineau McGuire Chartered, Minneapolis, Minnesota (for respondents Heartland Information Services, Inc. and Nicholas Foster)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Smith, Tracy, Judge.

UNPUBLISHED OPINION

**SMITH, TRACY**, Judge

Petitioner Kathryn Truscott seeks a writ of prohibition preventing the district court from enforcing its order allowing discovery of privileged communications between Truscott and her Arizona divorce attorney, Edina Strum. Because the district court abused its discretion when it determined that Truscott waived the attorney-client privilege and consequently exceeded its authority to order production of privileged information, we grant Truscott's petition for a writ of prohibition.

## FACTS

In 2013, Truscott initiated divorce proceedings in Arizona. Truscott later retained Heartland Investigative Group[1] to locate her then-husband in Minnesota and investigate his financial and living circumstances. Heartland eventually located Truscott's husband and determined that he was staying at respondent Stacey McNeely's home in Eden Prairie.

With Truscott's authorization, Heartland searched the garbage at the McNeely residence on several occasions and prepared a report based on its discoveries. The report contained information about McNeely and her three children (collectively respondents), including medical and financial records, as well as social security numbers. Heartland sent the report to Truscott. Truscott reviewed the report and shared it with Strum. Strum then disclosed it to Truscott's husband's divorce attorney.

---

[1] Respondent Heartland Information Services, Inc. (d/b/a Heartland Investigative Group) did not participate in Truscott's petition for a writ of prohibition.

Respondents learned of the Heartland report and brought suit against Truscott, Heartland, and Nicholas Foster (a Heartland employee), alleging four claims: (1) intrusion upon seclusion (invasion of privacy), (2) conversion or civil theft, (3) trespass, and (4) intentional infliction of emotional distress.

In her answer, Truscott admitted that she hired and paid Heartland to investigate her husband, but she denied all other allegations in the complaint. She also raised affirmative defenses including failure to state a claim, statute of limitations, waiver, estoppel, laches, ratification, justification, election of remedies, failure of conditions precedent, payment, release, unclean hands, and "any or all of the affirmative defenses contemplated by the Minnesota Rules of Civil Procedure."

Respondents' counsel deposed Truscott. Truscott testified that she hired Heartland to locate her husband and provide further information about his financial condition. She also testified that she wanted to know more about the environment her children would potentially be visiting after the divorce. In response to questions, Truscott claimed that she did not know if Strum planned to send the report to her husband's attorney or that Strum would produce it in the lawsuit.

Respondents' counsel asked Truscott if she and Strum had discussed sending or producing the Heartland report in the divorce proceedings, and Truscott answered, "Yes." Counsel asked Truscott about any specific discussions to which Truscott replied, "I don't really recall, other than, like, that they were coming. Like, letting her know that they were on their way." Counsel also inquired if Truscott had directed anybody not to

disseminate the Heartland report, and Truscott answered that she gave that instruction to Strum.

At several points in the deposition, respondents' counsel asked Truscott if she had relied on Strum's legal advice in determining whether the Heartland report should be produced, and if so, to whom. Truscott gave one-word answers such as "[a]bsolutely" or "[y]es." During this line of questioning, Truscott's attorney objected repeatedly, asserting attorney-client privilege.

After the deposition, respondents served a subpoena duces tecum on Strum, asking for documents and testimony regarding: (1) Heartland's investigation, (2) advice given to Truscott regarding the investigation, (3) decisions Strum made regarding the Heartland investigation, and (4) advice Strum gave about dissemination of the Heartland report. Respondents also moved to compel additional deposition testimony from Truscott. Respondents maintained that Truscott waived her attorney-client privilege by putting reliance on her attorney's advice "at issue." Truscott moved to quash or limit the subpoena and opposed respondents' motion to compel.

The district court issued an order on the motions. In relevant part, the district court granted respondents' motion to compel additional testimony from Truscott and denied Truscott's motion to quash. The district court limited the scope of Strum's deposition to decisions she made about the Heartland investigation and the advice she gave about the report's dissemination. The district court also limited Truscott's additional deposition to "those questions she was instructed not to answer and closely-related follow-up questions."

4

The district court determined that Truscott had waived her attorney-client privilege by testimony and by putting privileged communications "at issue":

> Here, Truscott testified about her reliance on advice from attorney Strum. Minnesota has recognized that a client may waive attorney-client privilege by testimony. . . .
> . . . .
> In her deposition responses to questions about her intent and motives, Truscott volunteered that she relied on attorney Strum with regard to the disclosure and circulation of the Heartland report and its attachments. Thus, Truscott placed her protected communications with attorney Strum at issue, making their communications relevant. Truscott expressly stated that she relied upon the advice of attorney Strum regarding disclosure and manner of circulating the Heartland report—for disclosure to [Truscott's husband's divorce attorney] as well as marking documents confidential, redacting some information, and/or recalling the documents. Because Truscott put her communications with attorney Strum at issue in response to questions about her intent and motives in disclosing and circulating the Heartland report, she has waived the attorney-client privilege.

Truscott petitions for a writ of prohibition.

## DECISION

### I.

Truscott contends that she is entitled to a writ of prohibition because the district court erroneously ordered the production of attorney-client privileged information. Discovery orders are interlocutory and generally not appealable as a matter of right, but "a writ of prohibition is the appropriate form of relief when a court has exceeded its power to order discovery." *Loveland v. Kremer*, 464 N.W.2d 306, 308 (Minn. App. 1990) (quotation omitted).

5

Prohibition is an extraordinary remedy that this court issues only when (1) the district court is about to exercise judicial power that is (2) unauthorized by law and (3) "will result in injury for which there is no other adequate remedy at law." *Wasmund v. Nunamaker*, 277 Minn. 52, 54, 151 N.W.2d 577, 579 (1967). A writ of prohibition should be reserved for "extreme cases" to "secure order and regularity" in the district courts. *Weidel v. Plummer*, 243 Minn. 476, 480, 68 N.W.2d 245, 247 (1955).

Respondents contend that, even assuming the district court's discovery order constitutes an abuse of discretion, Truscott is not entitled to a writ of prohibition because she has an alternative remedy in a posttrial appeal. We disagree. Truscott currently has the untenable choice between revealing attorney-client privileged communications or facing contempt findings for refusing to comply with the district court's discovery order. *See Thermorama, Inc. v. Shiller*, 271 Minn. 79, 84, 135 N.W.2d 43, 46 (1965) (discussing that, in appropriate cases, a writ of prohibition may be used to avoid "the harshness of the rule which requires an attorney to subject himself to a finding of contempt and then appeal from the contempt order before a pretrial order can be reviewed"). Postjudgment appeal will not allow Truscott to undo the harm of the discovery order: the revelation of privileged communications that she had with her divorce attorney. When a district court exceeds its authority to order discovery, a writ of prohibition is an appropriate form of relief. *See Loveland*, 464 N.W.2d at 308.

## II.

Truscott argues that the district court abused its discretion when it compelled discovery of privileged information. A district court has wide discretion to issue

6

discovery orders, and, absent a clear abuse of that discretion, a discovery order will not be disturbed. *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007). "We review a district court's [discovery] order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." *Id.* The district court set out two bases for Truscott's privilege waiver: waiver by testimony and waiver by placing counsel's advice "at issue." We address each in turn.

## A. Waiver by Testimony

Minnesota has codified its attorney-client privilege:

> An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.

Minn. Stat. § 595.02, subd. 1(b) (2014). A client may waive the privilege by "conduct or affirmative consent." *State ex rel. Schuler v. Tahash*, 278 Minn. 302, 308, 154 N.W.2d 200, 205 (1967). "[A] client impliedly waives the privilege where . . . he himself discusses the contents of the professional communication . . . ." *Id.*

In their brief, respondents identify only one instance in which they assert Truscott discussed the contents of an attorney-client communication:

> Q: Did you ever tell anybody not to disclose these documents to anyone? And by "these documents," I mean the Heartland reports and their attachments.
> A: Yes.
> Q: Who did you tell that to?
> A: Edina [Strum].

7

Respondents' counsel then asked "When did you tell her that?" Truscott responded, "I don't know the date." Truscott's attorney then objected on the basis of attorney-client privilege and said, "We're not getting into that."

Respondents' counsel continued his questioning, asking for more details around Truscott's instruction to her lawyer not to disclose the Heartland report. He asked Truscott about the time frame of her instruction, the number of communications with her counsel, the subject of communications with counsel, and so on. Throughout this questioning, Truscott's lawyer objected on the basis of privilege, and respondents' counsel insisted that his questions were permissible because they did not seek the contents of privileged communications.

Our supreme court has described with specificity the types of communications that are protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998) (quotation omitted). A threshold matter in determining privilege is whether the communication is one "in which legal advice is sought or rendered." *Id.* at 444. "'[A]s a barrier to testimonial disclosure, the privilege tends to suppress relevant facts and must be strictly construed.'" *Id.* at 440 (quoting *Kahl v. Minn. Wood Specialty, Inc.*, 277 N.W.2d 395, 399 (Minn. 1979)).

8

Truscott's purported instruction to her lawyer not to disclose the Heartland report was not given for the purpose of seeking legal advice and therefore is not protected by the attorney-client privilege. *See id.* at 444. Consequently, Truscott's testimony about the contents of that instruction, or the fact that Truscott gave it, did not waive the attorney-client privilege regarding other, privileged communications. And because the instruction was not privileged, Truscott's objection to testimony concerning it was not well-founded.

## B. At-Issue Waiver

The district court also determined that Truscott waived the attorney-client privilege by placing the privileged communications with her lawyer "at issue." The existence of an exception to a testimonial privilege is reviewed de novo. *See State v. Expose*, 872 N.W.2d 252, 257 (Minn. 2015) (determining whether Minnesota's therapist-client privilege is subject to a "threats exception").

As an initial matter, Truscott contends that we are constrained from adopting a rule of at-issue waiver because of codification of the privilege in statute. *See* Minn. Stat. § 595.02, subd. 1(b). We disagree. It is true that we do not generally "read into the plain language of a statute exceptions and limitations which do not appear." *State ex rel. Holecek v. Ross*, 472 N.W.2d 185, 186 (Minn. App. 1991). Accordingly, when a privilege is a creature of statutory creation, Minnesota appellate courts have deferred to the legislature's ability to create exceptions. *See, e.g.*, *Expose*, 872 N.W.2d at 258-59 (rejecting a "threats exception" to the statutory therapist-client privilege because the existence of other statutorily-provided exceptions "demonstrate[s] that the Legislature knows how to create an exception . . . when it wishes to do so").

The attorney-client privilege, however, is not a creature of statute; the statute codified the common-law privilege. *State v. Walen*, 563 N.W.2d 742, 752 (Minn. 1997). The statute is silent on waivers to the attorney-client privilege. *See* Minn. Stat. § 595.02, subd. 1(b). But waivers not listed in the statute exist in caselaw. *See Walen*, 563 N.W.2d at 752 (recognizing that a client implicitly waives the attorney-client privilege when the client "alleges a breach of duty to him by the attorney" (quotation omitted)); *State ex rel. Humphrey v. Philip Morris Inc.*, 606 N.W.2d 676, 691 (Minn. App. 2000) (discussing the crime-fraud exception to the attorney-client privilege), *review denied* (Minn. Apr. 25, 2000). When a new waiver to the attorney-client privilege warrants recognition, Minnesota's appellate courts may grant it. *See Walen*, 563 N.W.2d at 753 (holding that a defendant who asserts an ineffective-assistance-of-counsel claim waives the attorney-client privilege on all relevant communications).

We turn now to the question of at-issue waiver. While our supreme court has recognized some implied waivers of the attorney-client privilege, *see id.* at 752, it has not yet recognized an at-issue waiver. As recently as 2011, our supreme court observed that federal caselaw has recognized an at-issue waiver, but the court declined to address the issue because it was not necessary in the case before it. *See Kern v. Janson*, 800 N.W.2d 126, 132-33 n.3 (Minn. 2011). Nor has this court recognized an at-issue waiver.

We therefore look at the treatment of the at-issue waiver in other jurisdictions. Generally, a party makes an at-issue waiver when "through an affirmative act, the asserting party has placed the protected information at issue by making it relevant." *Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 857 (D. Minn. 2012) (quotation

10

omitted); *see also Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000) ("A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue.").  The at-issue waiver prevents a party from relying "on privileged communications to support its claim or defense and then shield[ing] the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).  A common example of an at-issue waiver is when a client uses reliance on legal advice as a defense.  *See Baker*, 209 F.3d at 1055; *see also Grand Jury Proceedings*, 219 F.3d at 182-83 (observing that a party's assertion of an advice-of-counsel defense is "[t]he quintessential example" of putting privileged communications "at issue," resulting in an implied waiver (quotation omitted)).

After Truscott petitioned for a writ of prohibition, we asked the parties for formal briefing on the at-issue waiver.  Their briefing collectively establishes that, while other jurisdictions have adopted the at-issue waiver, disagreement exists as to the appropriate test for that waiver.  Truscott identifies four predominant tests for the at-issue waiver: (1) the automatic-waiver rule; (2) the *Hearn* test, (3) the balancing test, and (4) the anticipatory-waiver test.  Respondents disagree that the balancing test represents a discrete test.

*Automatic-waiver rule*

Under the automatic-waiver rule, a party "automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant." *Pub. Serv. Co. of N.M. v. Lyons*, 10

11

P.3d 166, 171 (N.M. Ct. App. 2000) (quotation omitted). The automatic-waiver rule's

application is reflected in *Indep. Prods. Corp. v. Loew's, Inc.*, 22 F.R.D. 266 (S.D.N.Y.

1958). In *Loew's*, the defendants tried to depose one of the plaintiffs who invoked

constitutional privileges and refused to answer certain questions. 22 F.R.D. at 270. The

court concluded that the plaintiffs, by initiating a civil action and therefore subjecting

themselves to being called to testify, had waived their constitutional privileges. *Id.* at

277. Some courts have criticized the automatic-waiver rule's disregard of the important

role played by the attorney-client privilege. *See, e.g.*, *Frontier Refining Inc. v. Gorman-*

*Rupp Co.*, 136 F.3d 695, 700 (10th Cir. 1998) (stating that the automatic-waiver rule

"does not adequately account for the importance of the attorney-client privilege").

***Hearn test***

In the 1975 case of *Hearn v. Rhay*, the federal district court for the Eastern District

of Washington articulated three factors for an at-issue waiver:

> (1) assertion of the privilege was a result of some affirmative
> act, such as filing suit, by the asserting party; (2) through this
> affirmative act, the asserting party put the protected
> information at issue by making it relevant to the case; and (3)
> application of the privilege would have denied the opposing
> party access to information vital to his [claim or] defense.

68 F.R.D. 574, 581 (E.D. Wash. 1975). In *Hearn*, the court concluded that prison

officials who were defendants in a civil rights lawsuit put the legal advice they received

at issue by asserting the affirmative defense of qualified immunity. *Id.* at 577, 581. The

*Hearn* test is often cited as the majority rule, but has received some criticism in caselaw.

*See, e.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994)

12

(criticizing the *Hearn* test's emphasis on relevance and fairness); *Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1145-46 (La. 1987) (stating that the *Hearn* test "is no test at all because the assertion of almost any claim or defense can be called an affirmative act, and privileged material will usually be relevant and vital to the opposing party, or else he would not make the effort to obtain it" (quotation marks omitted)); *Lyons*, 10 P.3d at 172-73 (noting that the *Hearn* test "represents the majority view" but declining to adopt the *Hearn* test because it would "undermine the full and frank communications at the heart of the attorney-client privilege" (quotation marks omitted)).

### *Balancing test*

Truscott identifies what she calls the "balancing test," referring to a 1988 decision from the United States Court of Appeals for the First Circuit. *See Greater Newburyport Clamshell All. v. Pub. Serv. Co. of N.H.*, 838 F.2d 13, 20 (1st Cir. 1988). Under this balancing test, the analysis begins with a presumption in favor of maintaining the privilege. *Id.* The court then weighs the parties' competing interests:

> In a civil damages action, however, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails. The burden on the defendant is proportional to the importance of the privilege. The court should develop the parameters of its discovery order by carefully weighing the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct its most effective defense.

13

*Id.* The court also articulated guidelines to assist district courts with requests for privileged information:

> First, [the party seeking discovery] should demonstrate that the material to be discovered is relevant to their case. . . . Secondly, [the party seeking discovery] should demonstrate why it would be unreasonably difficult for them to obtain the information elsewhere or that redundant evidence will be helpful to their case. They do not have to prove that it is absolutely unavailable from other sources. Of course, the more the requested discovery would intrude into the privilege, the greater should be the showing of need and lack of reasonable alternative sources.

*Id.* at 22. Applying these principles in *Greater Newburyport*, the First Circuit held that the defendants in a civil-rights action could have only limited discovery into the plaintiffs' privileged communications with their counsel. *Id.* at 15, 22.

**Anticipatory-waiver test**

Finally, under the anticipatory-waiver test, the attorney-client privilege is waived when "a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail." *Smith*, 513 So. 2d at 1145; *see Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863 ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."). The anticipatory-waiver test takes the focus off of the privileged information's relevance to an adversary's claim or defense and places it on the party asserting the attorney-client privilege. *See Smith*, 513 So. 2d at 1146 ("A rule of waiver that turns on the opponent's need for information would subject the privilege to the

14

hazards of fortune: the continued existence of one's privilege would depend not on how one has used or abused the privilege, but rather on who one's adversary happens to be.").

In *Smith*, the plaintiff asserted at her deposition that she had no knowledge of a legal malpractice claim until her new attorney told her of the previous lawyer's mishandling of her husband's succession. *Id.* The court determined that the plaintiff's testimony may have constituted a partial waiver because she had indicated "an intention to use the disclosed communication" to explain her failure to file suit before the statute of limitations expired. *Id.* Ultimately, however, the court determined that the plaintiff could avoid disclosure of her privileged communications "by stipulating that she will not introduce . . . any communication on the same subject into evidence at trial." *Id.* at 1146-47.

### *Application to the District Court's Discovery Order*

Here, the district court determined that because Truscott's "intent and motives" regarding disclosure of the report are relevant to elements of respondents' tort claims, and because Truscott "volunteered that she relied on attorney Strum with regard to the disclosure," Truscott put Strum's legal advice "at issue" regarding Truscott's intent and motives and thereby waived the attorney-client privilege. In reviewing that decision, we find it unnecessary to determine which at-issue test, if any, Minnesota courts would follow because Truscott has not placed privileged information "at issue" under any of the proposed tests.

We begin with the test disputed by the parties: the balancing test. Under that test, privileged communications are "at issue" when an adversary's claim or defense is

"enmeshed in important evidence that will be unavailable to the [other party] if the privilege prevails." *Greater Newburyport*, 838 F.2d at 20. "Enmeshed" means more than just that the communications are "relevant to the subject matter of the action"; rather, it means that the "privileged information itself has independent relevance to the claim or defense because of its privileged status." *Sorenson v. H&R Block, Inc.*, 197 F.R.D. 206, 208 (D. Mass. 2000). In *Sorenson*, the court reasoned that the privileged conversations from *Greater Newburyport* were "enmeshed" because they gave rise to the plaintiffs' claim of deprivation of their Sixth Amendment rights. *Id.* at 207-08 In this case, Truscott's privileged communications are not "enmeshed" with respondents' claims because it is Truscott's general state of mind, not the privileged status of her attorney-client communications, that is relevant to respondents' claims. *See id.* at 208. In addition, respondents do not face the requisite undue hardship in obtaining evidence relevant to Truscott's state of mind. *See Greater Newburyport*, 838 F.2d at 22. Respondents were able to inquire about why Truscott obtained the Heartland report and ask her about disclosing the unredacted attachments, and they are able to ask Truscott about any instructions she gave her lawyer regarding disclosure.

Nor did Truscott waive her attorney-client privilege under the remaining tests. The *Hearn* test, automatic-waiver rule, and anticipatory-waiver test require an affirmative act by the waiving party; it is not enough under any of the tests that a defendant's state of mind is relevant to an element of a plaintiff's claim against the defendant. *See Hearn*, 68 F.R.D. at 581; *Smith*, 513 So. 2d at 1145; *Lyons*, 10 P.3d at 171. The district court reasoned that Truscott waived the attorney-client privilege by testifying to her reliance on

16

counsel.  In cases finding an implied waiver based on reliance on advice of counsel, a client has "taken the affirmative step in the litigation to place the advice of the attorney in issue."  *Rhone-Poulenc Rorer Inc.*, 32 F.3d at 863.

Here, Truscott was deposed.  During her deposition, the following exchanges occurred:

> Q:  And were you relying on [Strum's] legal advice to figure out who to send documents to?
> A:  Absolutely.
> . . . .
> Q:  And did you obtain legal advice from [Strum] specifically about disclosing these documents to [Truscott's husband's divorce attorney]?
> A:  No.
> . . . .
> Q:  But you were relying on Edina Strum's legal advice to figure out who to—
> A:  Right.
> Q:  —give these documents to?
> A.  I'm assuming she knows her role and the laws in Arizona.
> . . . .
> Q:  Did you take any steps, after you found out they were sent, to try to get them back or to try to stop the disclosure of them?
> A:  I wasn't aware I could do that.
> > [DEFENSE COUNSEL]:  I'll object to the extent that it requires attorney-client privilege.
> . . . .
> Q:  Anything other than communications with your attorney?
> A:  No, I wasn't aware there was anything else I could do.
> Q:  Again, you were relying on Edina Strum's legal advice—
> A:  Exactly.
> Q:  —in what to do?
> A:  Exactly.
> . . . .
> Q:  Do you know why Edina Strum sent the documents over to [Truscott's husband's divorce attorney]?
> A:  I have no idea why she sent them.

Q: And again, you're just relying on her legal advice in order to do the appropriate thing?
A: Right.
. . . .
Q: Did you discuss redacting the sensitive information from these documents before Edina Strum sent them to [Truscott's husband's divorce attorney]?
   [DEFENSE COUNSEL]: I'll object to the extent that it calls for attorney-client privilege. . . . Don't answer that question.
Q: Again, you were just relying on Edina Strum's legal advice to do the right [thing]; is that correct?
A: Yes.

Truscott was compelled in a deposition—in a case in which she is a defendant—to answer respondents' questions as to whether she relied on the advice of her counsel. She gave one-word responses to the questions. These compelled responses are not affirmative steps taken by a client to place privileged communications "at issue." *See Shukh*, 872 F. Supp. 2d at 857. Respondents have cited no case where a defendant's answer to such a question in a deposition effects an implied waiver of the attorney-client privilege. If it did, plaintiffs could create an at-issue waiver simply by asking defendants in depositions if they relied on the advice of their counsel in taking an action. Defendants who wisely sought legal advice before terminating an employee, publishing a news article, or taking any other number of actions later giving rise to a claim where their state of mind is at issue would find their privileged communications subject to discovery simply because they truthfully responded in a deposition that they relied on the advice of counsel. Such an implied waiver could chill parties from being candid with their counsel or even seeking legal advice. *See Kahl*, 277 N.W.2d at 398 ("The attorney can only effectively fulfill his roles as counselor, intermediary, and advocate if the client, assured

18

of confidentiality, is wholly free to completely and candidly disclose all the facts, favorable or unfavorable, to him."); *see also Rhone-Poulenc Rorer Inc.*, 32 F.3d at 862 ("The privilege forbidding the discovery and admission of evidence relating to communications between attorney and client is intended to ensure that a client remains free from apprehension that consultations with a legal adviser will be disclosed."); *Smith*, 513 So. 2d at 1146 ("Once all the technical requirements of a privilege have been met, courts should not impose their own sense of the equities . . . without adequately considering the full, system-wide benefits of a privilege.").

The requirement of an affirmative step by the client to put advice of counsel at issue in the litigation is consistent with other Minnesota caselaw on the attorney-client privilege. In cases finding waiver by testimony, the clients' revelation of privileged communications was voluntary. *See State v. Thompson*, 306 N.W.2d 841, 843 (Minn. 1981) (concluding that, even if communications were privileged, the privilege was fully waived through the client's pretrial disclosure of documents); *Tahash*, 278 Minn. at 306-08, 154 N.W.2d at 204-05 (finding that a criminal defendant waived privilege by voluntarily testifying to his attorney's advice to plead guilty); *Swanson v. Domning*, 251 Minn. 110, 118, 86 N.W.2d 716, 722 (1957) (stating that waiver exists "[w]here the client voluntarily testifies to [privileged] statements alleged to have been made to an attorney or statements made by the attorney to the client").

Truscott insists that she has no plans to assert a reliance-on-counsel defense in this case. She made the same assertion to the district court in her memorandum of law supporting her motion to quash. We agree with Truscott that she has not raised a

reliance-on-counsel defense through the generic statement in her answer that respondents' claims "may be barred . . . by any or all of the affirmative defenses contemplated by the Minnesota Rules of Civil Procedure." *See Smith*, 513 So. 2d at 1146 (stating that an implied waiver does not exist unless the party has "committed himself to a course of action that will require the disclosure of a privileged communication"). If Truscott attempts to raise the defense, respondents may seek appropriate relief and the district court may consider whether such an affirmative step implies a waiver of the attorney-client privilege. At present, however, Truscott has not affirmatively asserted the reliance-on-counsel defense and has not by implication waived the attorney-client privilege.

We take a final moment to note that this case is different than the typical case involving waiver of the attorney-client privilege. Here, Truscott's lawyer was not just an advice-giver; rather, Strum actually disclosed the report and was part of the chain of events that gave rise to respondents' claims. Accordingly, respondents may inquire of Truscott and Strum regarding nonprivileged information, including any instructions (or the lack thereof) that Truscott gave her lawyer regarding disclosure. But Strum's role in the report's disclosure does not open the door to discovery of privileged communications for purposes of establishing Truscott's intent as an element of respondents' claims. Unless Truscott, through her own actions, voluntarily waives her attorney-client privilege, truly privileged communications remain protected. *See Swanson*, 251 Minn. at 118, 86 N.W.2d at 722.

20

Because Truscott did not waive her attorney-client privilege by voluntarily testifying to the contents of privileged communications or by placing privileged communications "at issue," the district court abused its discretion by ordering discovery of privileged information. Truscott is entitled to a writ of prohibition to prevent enforcement of the portion of the district court's discovery order allowing discovery of privileged information.

**Writ granted**.